SUE ANN SALMON EVANS, State Bar No. 151562
sevans@DWKesq.com
MEAGAN M. KINSEY, State Bar No. 307457
mkinsey@DWKesq.com
Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA  90802
Telephone: 562.366.8500
Facsimile: 562.366.8505

Attorneys for Defendants
Los Angeles Unified School District and Anthony
Aguilar

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAYA LOFFMAN and JONATHAN LOFFMAN, on their own behalf and on behalf of their minor child M.L.; FEDORA NICK and MORRIS TAXON, on their own behalf and on behalf of their minor child K.T.; SARAH PERETS and ARIEL PERETS, on their own behalf and on behalf of their minor child N.P.; JEAN & JERRY FRIEDMAN SHALHEVET HIGH SCHOOL; and SAMUEL A. FRYER YAVNEH HEBREW ACADEMY,<br><br>        Plaintiffs,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION; TONY THURMOND, in his official capacity as Superintendent of Public Instruction; LOS ANGELES UNIFIED SCHOOL DISTRICT; and ANTHONY AGUILAR, in his official capacity as Chief of Special Education, Equity, and Access,<br><br>        Defendants. | Case No.  2:23-cv-01832-JLS-MRW<br><br>**DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)**<br><br>Judge :      Hon. Josephine L. Staton<br>Hearing Date:      July 21, 2023<br>Time:            10:30 a.m.<br>Courtroom:        8A<br><br><br>**Complaint Filed:  March 13, 2023**<br>**Trial Date: None** |

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

DWK 4022227v1

TO THE COURT, PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 21, 2023, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8A of the above-entitled Court, located at First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, Defendants Los Angeles Unified School District and Anthony Aguilar, (collectively, "LAUSD" or "District") will and hereby do move this Court for an order dismissing this action pursuant to the Federal Rules of Civil Procedure, rule 12(b)(6). This motion is based upon this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities in Support of Motion to Dismiss, the Declaration of Sue Ann Salmon Evans filed concurrently herewith, all other papers and pleadings on file in this action, and such oral and documentary evidence as may be presented at hearing of this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 15, 2023.

DATED: May 23, 2023

DANNIS WOLIVER KELLEY
SUE ANN SALMON EVANS
MEAGAN M. KINSEY

By: _/s/ Sue Ann Salmon Evans_
SUE ANN SALMON EVANS
Attorneys for Defendants
Los Angeles Unified School District
and Anthony Aguilar

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

DWK 4022227v1

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................... 3

TABLE OF AUTHORITIES .................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 12

I.      INTRODUCTION ......................................................................... 12

II.     STATUTORY BACKGROUND AND SUMMARY OF
        ALLEGATIONS ........................................................................... 13

        A.      The Individuals with Disabilities Education Act ................ 13

                1.      IDEA-Eligible Children With Disabilities Attending
                        Private Schools Have Different Rights Dependent on the
                        Circumstances of Their Private School Placement ................. 13

                2.      California Publicly-Placed Private School Students
                        Attend Non-Public Schools ......................................... 15

        B.      Summary of Plaintiffs' Complaint Concerning LAUSD .................. 16

III.    ARGUMENT ............................................................................... 16

        A.      Plaintiffs' Causes of Action Are Barred by LAUSD's Eleventh
                Amendment Immunity ................................................. 17

                1.      The District is Not a Proper Party to this Action ...................... 17

                2.      Aguilar Cannot Be Sued for Damages or Retrospective
                        Relief ................................................................. 19

        B.      Plaintiffs Fail to Establish Article III Standing to Bring Claims ....... 19

                1.      Plaintiffs M.L. and Loffmans Lack Standing Because
                        M.L. Is Not a Child With a Disability Under the IDEA .......... 20

                2.      Plaintiffs K.T., Taxon Family, N.P., and Perets Fail to
                        Establish Standing ................................................. 22

                3.      Plaintiffs Shalhevet and Yavneh Not Able and Ready to
                        Apply for NPS Status and Thus Lack Standing ....................... 24

        C.      Plaintiffs Fail to State a Claim for Violation of the Free Exercise
                Clause of the U.S. Constitution .......................................... 27

                1.      Plaintiffs Mischaracterize Alleged Otherwise Available
                        Public Benefits At Stake ........................................... 27

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

3

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

2.      LAUSD Did Not Exclude Student Plaintiffs From Public Benefit of a FAPE ..................................................... 28

3.      Education Code Sections 56361 and 56365 Contemplate Contractual Relationship, Not Merely Funding ...................... 29

4.      Non-Public School Certification is Not an Otherwise Available Public Benefit ............................................... 29

D.     Plaintiffs Fail to State an Equal Protection Claim Under the U.S. Constitution ............................................................................ 31

E.     If Strict Scrutiny is Applied, a Legitimate Government Interest Exists in Avoiding Ongoing Governmental Oversight of Religious Entities ..................................................................... 32

IV.    CONCLUSION .................................................................................... 36

CERTIFICATE OF COMPLIANCE ....................................................................... 37

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

DWK 4022227v1

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Armstrong v. Meyers,*
   964 F.2d 948 (9th Cir. 1992) ............................................................................... 19

*Balistreri v. Pacifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1988) ............................................................................... 16

*Belanger v. Madera Unif. Sch. Dist.,*
   963 F.2d 248 (9th Cir. 1992) ......................................................................... 17, 18

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................ 16

*Blackmon v. Springfield R-XII Sch. Dist.,*
   198 F.3d 648 (8th Cir. 1999) ............................................................................... 23

*C.N. v. Wolf,*
   410 F. Supp. 2d 894 (C.D. Cal. 2005) ................................................................ 18

*Carney v. Adams,*
   141 S.Ct. 493 (2020) ........................................................................ 21, 24, 25, 26

*Carson v. Makin,*
   142 S.Ct. 1987 (2022) ................................................................................... 27, 30

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
   508 U.S.C. 520, 546 (1993) ................................................................................ 27

*Cole v. Oroville Union High Sch. Dist.,*
   228 F.3d 1092 (9th Cir. 2000) ............................................................................. 20

*Committee for Public Education v. Nyquist,*
   413 U.S. 756 (1973) ...................................................................................... 32, 33

*Davis v. Fed. Election Comm'n,*
   554 U.S. 724 (2008) ............................................................................................ 20

*Doug C. v. Haw. Dep't of Educ.,*
   720 F.3d 1038 (2013) .......................................................................................... 15

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

DWK 4022227v1

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

*Edelman v. Jordan*,
    415 U.S. 651 (1974) ...................................................................... 19

*Endrew F. v. Douglas County Sch. Dist. RE-1*,
    137 S.Ct. 988 (2017).................................................................... 13

*Espinoza v. Montana Department of Revenue*,
    140 S.Ct. 2246 (2020) ................................................................. 30

*Florence County Sch. Dist. Four v. Carter*,
    510 U.S. 7 (1993) ........................................................................ 14

*Forest Grove Sch. Dist. v. T.A.*,
    557 U.S. 230 (2009) .................................................................... 14

*Gary S. and Sylvie S. v. Manchester Sch. Dist.*,
    374 F.3d 15 (1st Cir. 2004), *cert. denied*, 543 U.S. 988 (2004) ...........28, 31, 32

*Kutasi v. Las Virgenes Unified Sch. Dist.*,
    494 F.3d 1162 (9th Cir. 2007) .................................................... 24

*L.J. by and through Hudson v. Pittsburgh Unified Sch. Dist.*,
    850 F.3d 996 (9th Cir. 2017) ...................................................... 20

*Lee v. Weisman*,
    505 U.S. 577 (1991) .................................................................... 35

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) .................................................................... 33

*Levitt v. Committee for Public Ed.*,
    413 U.S. 472 (1973) ...............................................................33, 34

*S.L. ex rel. Loof v. Upland Unified Sch. Dist.*,
    747 F.3d 1155 (9th Cir. 2014) .................................................... 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...........................................................19, 22, 23

*Meek v. Pittenger*,
    421 U.S. 349 (1975) .................................................................... 33

*Ms. S. v. Vashon Island Sch. Dist.*,
    337 F.3d 1115 (9th Cir. 2003) .................................................... 23

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

DWK 4022227v1

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

*Mueller v. Allen*,
    463 U.S. 388 (1983) .................................................................................. 33

*Norwood v. Harrison*,
    413 U.S. 455 (1973) .................................................................................. 29

*Parks Sch. of Business v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) .................................................................... 16

*Pennhurst State School and Hospital v. Halderman*,
    465 U.S. 89 (1984) .................................................................................... 19

*Sato v. Orange Cty. Dep't of Educ.*,
    861 F.3d 923 (9th Cir. 2017) .............................................................. 17, 18

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976) .............................................................................. 20, 26

*Strout v. Albanese*,
    178 F.3d 57 (1st Cir. 1999), cert denied 120 S.Ct. 329 (1999) ................ 31

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) .................................................................................. 30

*Walz v. Tax Comm'n*,
    397 U.S. 664 (1970) .................................................................................. 33

*Wesley-Willis v. Cajon Valley Union Sch. Dist.*,
    No. 17CV1662-WQH-WVG, 2018 WL 3752833 (S.D. Cal. Aug. 8,
    2018) .......................................................................................................... 17

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989) .............................................................................. 17, 19

*Wolman v. Walter*,
    433 U.S. 229 (1977) .................................................................................. 33

*Zelman v. Simmons-Harris*,
    536 U.S. 639 (2002) .................................................................................. 33

**State Cases**

*Kirchmann v. Lake Elsinore Unified Sch. Dist.*,
    83 Cal. App. 4th 1098 (2000) ................................................................... 18

**Constitutional Provisions**

California Constitution art. IV § 8.................................................................................35

U.S. Const. amend. art. XI.......................................................................................17

U.S. Const. art. III.............................................................................................19, 20

**Federal Statutes**

20 U.S.C. § 14 12(a)(10)(A) ............................................................................13, 28, 32

20 U.S.C. § 1412(a)(1)(A) ...........................................................................................13

20 U.S.C. § 1412(a)(IV)(5)(A) .....................................................................................22

20 U.S.C. § 1412(a)(10) ........................................................................................13, 27

20 U.S.C. § 1412(a)(10)(ii)(I) .....................................................................................28

20 U.S.C. § 1412(a)(10)(vi) .........................................................................................14

20 U.S.C. § 1412(a)(10)(A)(i) ......................................................................................14

20 U.S.C. § 1412(a)(10)(A)(i)(III) ...............................................................................14

20 U.S.C. § 1412(a)(10)(A)(iii) ....................................................................................30

20 U.S.C. § 1412(a)(10)(A)(iv)(II) ..............................................................................14

20 U.S.C. § 1412(a)(10)(A)(vi) ....................................................................................29

20 U.S.C. § 1412(a)(10)(B) ....................................................................................15, 29

20 U.S.C. § 1412(a)(10)(C) ....................................................................................14, 29

20 U.S.C. § 1412(a)(10)(C)(iii) ...............................................................................14, 32

20 U.S.C. § 1414(d)(3)-(4) ...........................................................................................34

20 U.S.C. § 1415(a) ......................................................................................................21

42 U.S.C. § 1983 .....................................................................................................18, 19

508 U.S.C. § 520, 546 (1993) .......................................................................................27

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA 90802

DWK 4022227v1

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

**State Statutes**

Cal. Educ. Code § 220 ........................................................................................... 25

Cal. Educ. Code § 56034 ...................................................................................... 22

Cal. Educ. Code § 56360 ...................................................................................... 20

Cal. Educ. Code § 56361 ...................................................................................... 22

Cal. Educ. Code § 56361(e) ................................................................................. 15

Cal. Educ. Code § 56362(a)(1) ............................................................................ 22

Cal. Educ. Code § 56365 ................................................................................. 25, 29

Cal. Educ. Code § 56365(a) ...................................... 16, 22, 23, 26, 32, 34

Cal. Educ. Code § 56365(d) ................................................................................. 29

Cal. Educ. Code § 56365 et seq. ......................................................................... 15

Cal. Educ. Code § 56366 ........................................................................ 16, 26, 31

Cal. Educ. Code § 56366(a) ................................................................................. 31

Cal. Educ. Code § 56366(a)(2)(B) ...................................................................... 34

Cal. Educ. Code § 56366(a)(2)(B)(ii) ................................................................. 34

Cal. Educ. Code § 56366(a)(5) ............................................................................ 25

Cal. Educ. Code § 56366 et seq. ......................................................................... 26

Cal. Educ. Code § 56366.1(a) ....................................................................... 16, 26

Cal. Educ. Code § 56366.1(a)(1) ......................................................................... 25

Cal. Educ. Code § 56366.1(a)(3) ......................................................................... 25

Cal. Educ. Code § 56366.1(a)(4)(D) ................................................................... 34

Cal. Educ. Code § 56366.1(a)(5) ......................................................................... 25

Cal. Educ. Code § 56366.1(d) .............................................................................. 16

Cal. Educ. Code § 56366.1(e)(3) ......................................................................... 34

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

DWK 4022227v1

9

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

Cal. Educ. Code § 56366.1(j) ...................................................... 25

Cal. Educ. Code § 56366.2(a) ...................................................... 26

Cal. Educ. Code § 56366.10(b) ................................................... 25

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .................................... 17

Federal Rule of Civil Procedure 12(b)(6) .................................... 16

**Regulations**

34 C.F.R. § 300.8(a)(1) ............................................................... 20

34 C.F.R. § 300.8(c)(1)(1)(i) ...................................................... 21

34 C.F.R. § 300.9 ....................................................................... 32

34 C.F.R. § 300.17 ..................................................................... 31

34 C.F.R. § 300.115 ................................................................... 15

34 C.F.R. § 300.115(a) .............................................................. 32

34 C.F.R. § 300.137(a) .............................................................. 14

34 C.F.R. § 300.146 ............................................................. 15, 16

34 C.F.R. § 300.146(a) .............................................................. 20

34 C.F.R. § 300.146(b) .............................................................. 25

34 C.F.R. § 300.146(c) .............................................................. 25

34 C.F.R. § 300.147(a) .............................................................. 34

34 C.F.R. § 300.300(a)(3) .......................................................... 28

34 C.F.R. § 300.300(b)(3) .......................................................... 28

34 C.F.R. § 300.321(a)(1) .......................................................... 32

34 C.F.R. § 300.325(c) .............................................................. 15

34 C.F.R. § 300.507 ................................................................... 32

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

DWK 4022227v1

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

34 C.F.R. § 300.507(a) ............................................................................. 24

**Other Authorities**

U.S. Department of Education, *Guidance on Constitutionally Protected Prayer and Religious Expression in Public Elementary and Secondary Schools* (May 15, 2023) ............................................ 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

DWK 4022227v1

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA  90802

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs are a group of three Orthodox Jewish children with disabilities who reside in Los Angeles, their parents, and two private Orthodox Jewish schools located in Los Angeles. They bring this claim against California Department of Education ("CDE") and the Superintendent of Public Instruction (together, "State Defendants") and Los Angeles Unified School District ("District") and Anthony Aguilar, Chief of Special Education, Equity, and Access, in his official capacity (together, "LAUSD") claiming a violation of the Free Exercise and Equal Protection Clauses of the U.S. Constitution on the basis of religion. Despite the variety of individual disabilities and circumstances of each student, family, and school, Plaintiffs share the belief that the Education Code requirement for a private school to be nonsectarian in order to be state-certified as a non-public school ("NPS") is unconstitutional. Plaintiffs assert this state certification of private Orthodox Jewish schools as NPSs is necessary to protect their right to direct the education and religious upbringing of their children and ensure that private Orthodox Jewish schools can provide a "distinctively Orthodox Jewish education to children with disabilities." ECF, Dkt. No. 1, ¶152.

In making these claims, Plaintiffs ask this Court to water down the contract between an NPS and local educational agency ("LEA") to provide special education and related services to children with disabilities through their individualized education programs ("IEPs") and consider only the opportunity for religious private schools to receive funding. Plaintiffs also would like this Court to ignore the ongoing monitoring obligations that an LEA has over students attending NPSs and the NPS itself and the potential conflicts that could arise for an LEA attempting to oversee a private religious entity. Plaintiffs also broadcast their goal to only serve Jewish children and to provide religious education as part of the continuum of placement options in public schools. Plaintiffs cannot reasonably suggest that this

12

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

type of arrangement, which would clearly violate the Establishment Clause, is required to ensure their free exercise of religion.

Beyond Plaintiffs' failure to state viable claims, Plaintiffs also fail to establish proper standing to bring this Complaint and inappropriately include LAUSD as a party. For these reasons, Plaintiffs' complaint must be dismissed.

## II.  STATUTORY BACKGROUND AND SUMMARY OF ALLEGATIONS

### A.  The Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act ("IDEA") requires an LEA to make available a free appropriate public education ("FAPE") available to all children with disabilities residing within its boundaries who meet the eligibility requirements. 20 U.S.C. § 1412(a)(1)(A). The LEA provides a child with a disability with a FAPE through developing an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017).

While a FAPE is available to all children with disabilities, the type of special education and related services the child receives depends on the nature and circumstances of the child's school enrollment. For children with disabilities who attend private schools, the IDEA provides for three separate schemes: 1) children whose parents place them at a private school ("Parentally-Placed"); 2) children whom LEAs place in private schools through the IEP process as an offer of FAPE ("Publicly-Placed"); and 3) children whose parents receive the LEA's offer of FAPE, reject that offer, place the child at a private school, and seek reimbursement from the LEA ("Unilaterally-Placed"). 20 U.S.C. § 1412(a)(10).

#### 1.  IDEA-Eligible Children With Disabilities Attending Private Schools Have Different Rights Dependent on the Circumstances of Their Private School Placement

For Parentally-Placed private school students, the parent places the child with a disability at a private school. 20 U.S.C. § 14 12(a)(10)(A). This parental decision

13

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

may occur after a parent receives and then declines an offer of FAPE or in lieu of pursuing special education eligibility and an offer of FAPE from the LEA. "No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." 34 C.F.R. § 300.137(a). The student is entitled to "equitable services." 20 U.S.C. § 1412(a)(10)(vi). Equitable services are the special education and related services in an amount equal to a proportionate share of the Federal funds made available to the school district under the IDEA. 20 U.S.C. § 1412(a)(10)(A)(i). All Parentally-Placed private school students are eligible for equitable services, including those who attend religious schools. 20 U.S.C. § 1412(a)(10)(A)(i)(III). Also, while equitable services are provided to students attending religious schools, the IDEA requires the services themselves to be "secular, neutral, and nonideological." 20 U.S.C. § 1412(a)(10)(A)(iv)(II).

The second group of children with disabilities attending private schools similarly are placed by their parents at the family's expense but this placement occurs following the parent's rejection of the LEA's offer of FAPE due to an assertion that the LEA failed to make a FAPE available. 20 U.S.C. § 1412(a)(10)(C). For these Unilaterally-Placed private school students, the LEA either previously provided the student with special education and related services through an IEP or had an obligation, but failed, to make the student an offer of FAPE. 20 U.S.C. §1412(a)(10)(C)(iii); *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009). The parent places the child at the private school and then seeks reimbursement from the LEA through an administrative due process proceeding. *Id*. A court or hearing officer can even order an LEA to reimburse parents for religious school placements through this process. *See*, *e.g.*, *S.L. ex rel. Loof v. Upland Unified Sch. Dist.*, 747 F.3d 1155, 1160 (9th Cir. 2014).

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA  90802

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

The final category of private school children with disabilities attend the private school as a means of the LEA providing a FAPE and the full continuum of special education and related services. 20 U.S.C. § 1412(a)(10)(B); 34 C.F.R. § 300.115. For these Publicly-Placed private school students, the LEA offers the child placement at the private school as FAPE through the IEP process. *Id.* Parents are important members of their child's IEP team and "parental participation in the IEP and educational process is critical to the organization of the IDEA." *Doug C. v. Haw. Dep't of Educ.*, 720 F.3d 1038, 1043 (2013). Still, the LEA is ultimately responsible for offering an appropriate IEP, including placement, and ensuring implementation of the IEP. 20 U.S.C. § 1412(a)(10)(B). Publicly-Placed private school students must receive an education that meets the standards for a public education and have the same rights as a child with a disability who is served by the public agency itself. 34 C.F.R. § 300.146. Unlike Parentally-Placed and Unilaterally-Placed private school students, the LEA remains responsible for the Publicly-Placed private school student's receipt of a FAPE while at the NPS. 34 C.F.R. § 300.325(c).

### 2.    California Publicly-Placed Private School Students Attend Non-Public Schools

In California, the Education Code outlines the process through which LEAs contract with private schools for the placement of Publicly-Placed private school students. Cal. Educ. Code § 56365 et seq. "Nonpublic, nonsectarian school services" are one of the program options available to IDEA-eligible children on the continuum. Cal. Educ. Code § 56361(e). To meet the IDEA requirements that Publicly-Placed private school students 1) receive special education and related services in conformance with their IEP and at no cost to the parents, 2) are provided with an education that meets the standards that apply to education provided by LEAs, and 3) have all of the rights of a child with a disability who is served by the LEA, the Education Code requires LEAs to enter into contracts with NPSs.

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

15

1    34 C.F.R. § 300.146; Cal. Educ. Code § 56365(a). In addition, this master contract

2    must incorporate provisions concerning instruction, program development, staffing,

3    documentation, IEP implementation, and LEA oversight. Cal. Educ. Code § 56366.

4         An LEA may only enter into a master contract with a state-certified NPS.

5    Cal. Educ. Code § 56366.1(d). An NPS seeks certification through filing an

6    application with the Superintendent of Public Instruction on CDE forms. Cal. Educ.

7    Code § 56366.1(a).

8         **B.**      **Summary of Plaintiffs' Complaint Concerning LAUSD**

9         Plaintiffs allege LAUSD violated the Free Exercise Clause in refusing to

10    contract with religious schools as NPSs as a means of providing FAPE. ECF, Dkt.

11    No. 1, ¶180. Plaintiffs further suggest that LAUSD has discretion under the

12    Education Code to waive the NPS certification requirements yet refused to waive

13    the "nonsectarian" requirement for School Plaintiffs. ECF, Dkt. No. 1, ¶¶199-200.

14    Plaintiffs further claim LAUSD denied them equal protection under the law on the

15    basis of religion in prohibiting Plaintiffs from using public funds for their children

16    at religious schools. ECF, Dkt. No. 1, ¶206. Plaintiffs' arguments fail on all counts.

17    **III.**    **ARGUMENT**

18         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

19    challenges the legal sufficiency of the claims alleged in the complaint. *See Parks*

20    *Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under

21    Rule 12(b)(6) is appropriate if the complaint either lacks "a cognizable legal

22    theory" or fails to contain "sufficient facts alleged under a cognizable legal theory."

23    *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). "While a

24    complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

25    factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

26    to relief requires more than labels and conclusions, and a formulaic recitation of a

27    cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

28    544, 555 (2007) (citations and quotations omitted). When all allegations, even if

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA 90802

16

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

true, could not lead to a legal violation, a complaint must be dismissed.

At the outset, LAUSD is not a proper party to this action as the Eleventh Amendment bars Plaintiffs' causes of action against school districts as arms of the state. Plaintiffs also fail to establish requisite standing to bring the causes of action. The claims themselves are also deficient, as Plaintiffs cannot demonstrate any exclusion from an otherwise available public benefit or interference with Plaintiffs' ability to direct the religious upbringing of their children. Moreover, LAUSD can demonstrate that the nonsectarian requirement for NPS certification is narrowly tailored to serve the compelling interest of avoiding governmental oversight of religious entities. Together, these flaws require this Court to dismiss the Complaint.

**A.     Plaintiffs' Causes of Action Are Barred by LAUSD's Eleventh Amendment Immunity**

**1.     The District is Not a Proper Party to this Action**

All of Plaintiffs' causes of action are barred by the District's sovereign immunity. Under the Eleventh Amendment to the United States Constitution, a state is not subject to suit in federal court. U.S. Const. Amend. XI; *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). In *Belanger v. Madera Unif. Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992), the Ninth Circuit held that California school districts are arms of the State of California, and thus enjoy Eleventh Amendment immunity. *Id.*, at 251-52. And in 2017, the Ninth Circuit reaffirmed its holding that California school districts are arms of the State with Eleventh Amendment immunity, after changes to the California Education Code. *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923 (9th Cir. 2017). A sovereign immunity defense is the proper subject of a Rule 12(b)(1) or (b)(6) motion to dismiss. *Id.* at 927, fn. 2 ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion.").

While several exceptions to Eleventh Amendment immunity exist, none apply here. *Wesley-Willis v. Cajon Valley Union Sch. Dist.*, No. 17CV1662-WQH-

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

17

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

WVG, 2018 WL 3752833, at *3 (S.D. Cal. Aug. 8, 2018) (reciting exceptions). For example, Plaintiffs' prayer for declaratory and injunctive relief against the District does not overcome the District's sovereign immunity. *C.N. v. Wolf*, 410 F. Supp. 2d 894, 898 (C.D. Cal. 2005) ("an action may not be maintained against the State, or in this case the [school] District, an agency of the State, for either damages or injunctive and declaratory relief.").

Plaintiffs bring this action under 42 U.S.C. section 1983 related to the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause. ECF, Dkt. No. 1, ¶1. While Plaintiffs' subsequent list of causes of action references the constitutional provisions without mention of section 1983, the First and Fourteenth Amendments are not self-enforcing and require section 1983 to bring a suit against state actors. 42 U.S.C. § 1983.

The Ninth Circuit has held—multiple times—that California school districts enjoy Eleventh Amendment immunity against section 1983 claims. *Sato*, 861 F.3d at 927 (affirming dismissal of section 1983 claim based on immunity); *Belanger*, 963 F.2d at 250 (same, but on summary judgment). For their part, California courts also treat California school districts, and interpret California law regarding school districts, the same. *Kirchmann v. Lake Elsinore Unified Sch. Dist.*, 83 Cal. App. 4th 1098, 1100 (2000) ("in accordance with authority of the Ninth Circuit Court of Appeals holding that a California school district is an arm of the state for Eleventh Amendment purposes . . . , we will conclude the District does enjoy the state's immunity from liability under section 1983."). Plaintiffs' assertion of any claims against the District under section 1983 in the face of overwhelming authority barring it is frivolous.

For similar reasons, Plaintiffs' claims also fail on their merits against the District because the District, an arm of the State of California, is not a "person" within the meaning of section 1983. Section 1983 provides a remedy against a "person" acting "under color of" state law who violates a federal law or

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA 90802

18

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

constitutional provision. 42 U.S.C. § 1983. But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The District, an arm of the State, is not a "person" to which section 1983 applies as a matter of statute, in addition to its Constitutional immunity. *Armstrong v. Meyers*, 964 F.2d 948, 949-50 (9th Cir. 1992) ("The Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment purposes, and therefore is not a 'person' within the meaning of section 1983."). Accordingly, the District itself must be dismissed from this case.

### 2.   Aguilar Cannot Be Sued for Damages or Retrospective Relief

Further, Plaintiffs cannot make claims for damages or other retrospective relief against Aguilar, a District employee acting in his official capacity. Courts disallow retroactive relief against a state or state official in an official capacity, even if the relief is equitable in nature. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 102-03, 106 (1984); *Edelman v. Jordan*, 415 U.S. 651, 667-69 (1974). To the extent any viable claims exist against Aguilar, which LAUSD challenges, no damages or other retroactive relief may be awarded.

### B.   Plaintiffs Fail to Establish Article III Standing to Bring Claims

Article III of the U.S. Constitution limits the jurisdiction of federal courts to only those cases that present an actual case or controversy. Plaintiffs bear the burden of proving they have this "irreducible constitutional minimum of standing" to proceed: 1) an injury in fact, 2) a causal connection between the injury and the conduct complaint of, and 3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). An injury in fact is an "invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560, quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The second element, the causal connection, requires that this injury be "fairly…trace[able] to the challenged action of the defendant, and

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

not…the] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Finally, Plaintiffs must show a likelihood, as opposed to mere speculation, that the injury will be "redressed by a favorable decision." *Id*. at 38, 43.

If Plaintiffs lack standing to pursue any claims, the Court is without jurisdiction to resolve them and must dismiss the claims. *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000), citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (standing is a jurisdictional issue deriving from the case or controversy requirement of Article III); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (a plaintiff is required to "demonstrate standing for each claim he seeks to press and for each form of relief that is sought").

## 1.   Plaintiffs M.L. and Loffmans Lack Standing Because M.L. Is Not a Child With a Disability Under the IDEA

The Education Code sections referencing the nonsectarian requirement for NPS certification only apply to Publicly-Placed private school students. *See* Cal. Educ. Code § 56360 (continuum of program options is available for "individuals with exceptional needs for special education and related services, as required by the [IDEA]"); 34 C.F.R. § 300.146(a) (outlining LEA responsibilities for "child with a disability who is placed in or referred to a private school or facility by a public agency"). A "child with a disability" under the IDEA meets one of the thirteen eligibility criteria, as determined by the LEA, and "who, by reason thereof, needs special education and related services." 34 C.F.R. § 300.8(a)(1). The Complaint fails to plead facts to show that Plaintiff M.L. meets this eligibility prerequisite.

The Complaint incorrectly assumes that M.L.'s medical diagnosis of autism necessarily qualifies him as a child with a disability under the IDEA. ECF, Dkt. No. 1, ¶¶79-80. But a medical diagnosis is not enough. *L.J. by and through Hudson v. Pittsburgh Unified Sch. Dist.*, 850 F.3d 996, 1003 (9th Cir. 2017) ("Even if a child

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

20

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

has such a disability, he or she does not qualify for special education services if support provided through the regular school program is sufficient.") To meet the eligibility criteria under the IDEA, autism must both "significantly affect[] verbal and nonverbal communication and social interaction" and "adversely affect[] a child's educational performance." 34 C.F.R. § 300.8(c)(1)(1)(i). The Complaint contains no facts to suggest that LAUSD had ever had the opportunity to evaluate M.L. for special education or determine whether he meets the eligibility criteria. Without eligibility for special education under the IDEA, M.L. would not have the opportunity to be a Publicly-Placed private school student. Therefore, M.L. cannot reasonably claim an injury in fact related to the nonsectarian NPS certification requirement

By the same token, the Loffmans do not have an injury in fact because they are not parents of a child with a disability as defined in the IDEA. Without this qualification, the Loffmans do not have a guarantee of procedural safeguards related to the provision of a FAPE. 20 U.S.C. § 1415(a). Further, the Loffmans would not be members of an IEP team who would make determinations about M.L.'s placement at an NPS, so the nonsectarian NPS certification requirements have no impact on the NPS placement options available to them.

M.L. and the Loffmans also cannot identify any link between any LAUSD action and the nonsectarian NPS certification requirement. The Complaint does not show the Loffmans have even sought an offer of FAPE from LAUSD. Instead, M.L. and the Loffmans present just an "abstract generalized grievance," which does not establish standing. *Carney v. Adams*, 141 S.Ct. 493, 499 (2020).

Finally, no redressability exists for M.L. and the Loffmans. Because M.L. is not eligible for special education, a change to the nonsectarian certification requirement would result in no change for M.L. or the Loffmans. For these reasons, Plaintiffs M.L. and Loffmans lack standing to pursue this case.

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

### 2.    Plaintiffs K.T., Taxon Family, N.P., and Perets Fail to Establish Standing

Student Plaintiffs K.T. and N.P. fail to demonstrate that they suffered an "actual or imminent" injury extending beyond the "conjectural or hypothetical" that could form the basis for an injury in fact. *Lujan*, 504 U.S. at 560. The Complaint does not plead that K.T. or N.P. require placement in an NPS or claim their respective IEP teams are considering such a change in placement that would be impacted by the definition or certification requirements of an NPS.

Any placement change also could not be "actual or imminent" because LAUSD is required to comply with the IDEA's least restrictive environment requirement. "To the maximum extent appropriate," a child with a disability must be "educated with children who are not disabled." 20 U.S.C. § 1412(a)(IV)(5)(A). A child may be removed from a regular educational environment "only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id*. An NPS is one of the most restrictive settings and can be offered only "if no appropriate public education program is available." Cal. Educ. Code §§ 56034, 56361, 56365(a).

By their own admission, K.T. and N.P. currently attend comprehensive public middle schools in LAUSD. ECF, Dkt. No. 1, ¶¶93, 118. K.T. receives services from the resource specialist program, which is one of the least restrictive settings since students spend a majority of their school day in the regular classroom. ECF, Dkt. No. 1, ¶106. Cal. Educ. Code §§ 56361, 56362(a)(1). While the Complaint does not share the type of classroom N.P. attends, his attendance of a public middle school campus provides for daily interactions with nondisabled peers, which is also less restrictive than an NPS. ECF, Dkt. No. 1, ¶135. Neither K.T. nor N.P. claim that they require placement at an NPS or that an NPS is a placement consideration for their IEP teams. Accordingly, the nonsectarian NPS

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

1   certification requirement has no bearing on K.T. and N.P.'s placements or receipt of

2   a FAPE and no injury in fact exists.

3        Even if the IEP teams for K.T. or N.P. considered or recommended NPS

4   placement in the future, this type of "'some day' intentions – without any

5   description of concrete plans, or indeed even any specification of when the some

6   day will be – do not support a finding of the 'actual or imminent' injury" that is

7   necessary to demonstrate standing. *Lujan*, 504 U.S. at 564. Moreover, the stringent

8   limitation on NPS placements to only situations where "no appropriate public

9   education program is available" further extends the "some day" nature of NPS

10  placement for K.T. and N.P. Cal. Educ. Code § 56365(a).

11       The injury in fact analysis for the Taxon and Perets families fail on the same

12  basis. Parental participation in the IEP process "does not require districts 'simply to

13  accede to parents' demands without considering any suitable alternatives.'"

14  *Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648 (8th Cir. 1999); *see Ms. S.*

15  *v. Vashon Island Sch. Dist.*, 337 F.3d 1115 (9th Cir. 2003) (District "has no

16  obligation to grant [parent] a veto over any individual IEP provision."). In

17  consideration of the parent's role on an IEP team, Parent Plaintiffs could not

18  demand placement in an NPS for K.T. or N.P. unless the IEP team agreed "no

19  appropriate public education program [was] available." Cal. Educ. Code §

20  56365(a). Therefore, Parent Plaintiffs cannot demonstrate an injury in fact because

21  K.T. and N.P.'s IEP teams have not recommended NPS placement.

22       Both the IEP and due process complaint resolution processes impede these

23  Plaintiffs from showing causation between LAUSD's alleged unconstitutional

24  conduct and their alleged injury. LAUSD's compliance with the Education Code's

25  requirement to enter into a contract with only certified NPSs does not impact

26  Plaintiffs because NPS placement is not on the table for their IEP teams. A removal

27  of the "nonsectarian" NPS certification requirement would not change Student

28  Plaintiffs' placements. In any event, if Plaintiff Parents disagree with the IEP

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

23

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

team's recommendations concerning placement for K.T. or N.P., the IDEA requires them to initiate a due process hearing prior to filing any civil action. 34 C.F.R. § 300.507(a). Plaintiff Parents' concerns about their children's receipt of a FAPE in LAUSD is properly resolved through a due process complaint and not the present claim. *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1168 (9th Cir. 2007) ("[I]f the injury could be redressed to any degree by the IDEA's administrative procedures—or if the IDEA's ability to remedy an injury is unclear—then exhaustion is required.") Clearly, Student and Parent Plaintiffs lack standing.

### 3.   Plaintiffs Shalhevet and Yavneh Not Able and Ready to Apply for NPS Status and Thus Lack Standing

Similarly, School Plaintiffs cannot show they are "able and ready" to apply for NPS status in the "reasonably foreseeable future," which evidences a lack of standing. *Carney*, 141 S.Ct. at 500. In *Carney v. Adams*, an aspiring judge with independent political affiliation claimed that political party balance requirement for membership on Delaware state courts created an injury in fact since he did not align with one of the major political parties. *Id*. at 497. The Court found this argument suspect because the *Carney* plaintiff was not truly "able and ready" to apply for a judgeship in the "reasonably foreseeable future" and upheld the dismissal of the case for lack of standing. *Id*. at 501. In analyzing the aspiring judge's potential injury in fact, the Court noted that plaintiff could not show 1) "any actual past injury," 2) "reference to an anticipated timeframe," 3) prior applications for a judicial position, 4) "prior relevant conversations," or 5) "other preparations or investigations." *Id*. School Plaintiffs have similar deficiencies, asking the Court to "rel[y] on a bare statement of intent alone against the context of a record that shows nothing more than an abstract generalized grievance." *Id*. at 502.

The statutory requirements for NPS certification are extensive and, on the face of the Complaint, the School Plaintiffs do not demonstrate compliance with key elements and even plead facts to suggest they cannot or do not intend to

24

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

comply. A Publicly-Placed private school student must be "provided an education that meets the standards that apply to education provided by the [state educational agency] and LEAs" and "ha[ve] all of the rights of a child with a disability who is served by a public agency." 34 C.F.R. § 300.146(b), (c). One right that public school children and any children attending a "program or activity conducted by an educational institution that receives, or benefits from, state financial assistance" have in California is the right to non-discrimination on the basis of a variety of protected characteristics, including religion. Cal. Educ. Code § 220. However, if certified as NPSs, School Plaintiffs would serve only "Jewish children with disabilities." ECF, Dkt. No. 1, ¶154. This intention to serve students of only one religion explicitly violates the state non-discrimination requirements and makes School Plaintiffs unable and not ready to comply with the NPS requirements.

The Complaint is also bereft of information about School Plaintiffs' ability to actually serve students with disabilities or preparations or investigations on that front. This serving of children with disabilities is the crux of the Education Code requirements concerning NPSs. Cal. Educ. Code § 56365. An NPS must provide "special education and designated instruction and services" from "appropriately qualified staff," including an administrator with appropriate credentialing. Cal. Educ. Code §§ 56366.1(a)(1), (a)(3), (a)(5). School Plaintiffs do not claim that they currently provide or are capable of providing these types of services to students with disabilities or are working towards those capabilities under any specific time frame. Incidentally, some credentialing components require at least two years of experience working with students with disabilities, so cannot be obtained in the "reasonably foreseeable future. *Id*.; *Carney*, 141 S.Ct. at 500.

In addition, an NPS must provide a "standards-based curriculum" with "standards-focused instructional materials" that implements a student's IEP. Cal. Educ. Code §§ 56366(a)(5), 56366.1(j), 56366.10(b). The Complaint does not indicate that the School Plaintiffs provide this type of standards-based instruction

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA 90802

25

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

and instead promote the provision of a "distinctively Orthodox Jewish education to children with disabilities." ECF, Dkt. No. 1, ¶152. For these reasons, Plaintiff schools, like the *Carney* plaintiff, are not "able and ready" to apply for NPS status, a requirement for an injury in fact.

School Plaintiffs' standing also breaks down with respect to causation related to LAUSD. The NPS certification process occurs separately from LAUSD, who has no control over the certification requirements, the application process, the certification itself, or the renewal or revocation of certification. Cal. Educ. Code § 56366 et seq. The Legislature, not LAUSD, created the NPS certification requirements outlined in the Education Code. Cal. Educ. Code § 56366. The state Superintendent of Public Instruction, not LAUSD, processes NPS certification requests through forms provided by the CDE. Cal. Educ. Code § 56366.1(a). The Superintendent of Public Instruction, not LAUSD, is responsible for waiver of any NPS certification requirements. Cal. Educ. Code § 56366.2(a). Contrary to the allegation in the Complaint, LAUSD has no control over how the Superintendent processes waiver requests. ECF, Dkt. No. 1, ¶199. School Plaintiffs' alleged injury related to the NPS certification requirements is not traceable to any LAUSD action and instead the result of the independent action of the state Superintendent and CDE. *See Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. at 41-42.

Similarly, the master contracting process interferes with School Plaintiffs' potential for redressability. NPS certification is not an avenue for automatic funding from an LEA. The Education Code requires LEAs to enter into master contracts as a condition of this funding. Cal. Educ. Code § 56365(a). LAUSD cannot compel a private entity to contract with it, even if parent or student desire placement at the particular NPS. This intervening step of the master contracting negotiation process makes automatic redressability of School Plaintiffs' alleged injury – lack of funding for students with disabilities – impossible.

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

Taken together, these factors demonstrate the School Plaintiffs lack of standing. The Court should dismiss this case, or LAUSD as a party, on that basis.

### C.  Plaintiffs Fail to State a Claim for Violation of the Free Exercise Clause of the U.S. Constitution

The First Amendment prohibits both any law "respecting an establishment of religion," (the Establishment Clause) and any law "prohibiting the free exercise thereof" (Free Exercise Clause). When a law "excludes religious observers from otherwise available public benefits," the government entity must demonstrate that the law is "narrowly tailored" to "advance 'interests of the highest order'." *Carson v. Makin*, 142 S.Ct. 1987, 1996 (2022); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S.C. 520, 546 (1993) (citations and quotations omitted). Plaintiffs cannot show that LAUSD excluded them from an otherwise available public benefit, which causes their Free Exercise Claim to fail.

### 1.  Plaintiffs Mischaracterize Alleged Otherwise Available Public Benefits At Stake

The Complaint strategically relies on vague references to "exclusion" from things characterized as "benefits" in a strained attempt to pigeonhole the nonsectarian NPS certification requirement into precedent on public funding for religious schools. Plaintiffs consistently and generally assert they have been excluded from Education Code sections 56361 and 56365 on account of their religion. ECF, Dkt. No. 1, ¶178. The plain language of these Education Code sections address the continuum of special education program options and the requirements for LEAs and NPSs in contracting for the provision of special education services. Yet, Plaintiffs are not excluded from this continuum of special education programming or the ability to attend an NPS. Private school placements, whether as Parentally-Placed, Unilaterally-Placed, or Publicly-Placed private school students, are available to all parents of children with disabilities. 20 U.S.C. § 1412(a)(10).

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

School Plaintiffs, on the other hand, characterize their "exclusion" as public funding for private religious schools. ECF, Dkt. No. 1, ¶¶160, 170. However, this mischaracterization and oversimplification of the NPS/LEA relationship as solely "funding" demonstrates School Plaintiffs' lack of understanding of the process. The Court should resist Plaintiffs' attempts to misguide on this front and instead recognize the extensive and problematic entanglement between LEA and private religious entity that Plaintiffs' scheme for allowing sectarian NPSs would create.

### 2.  LAUSD Did Not Exclude Student Plaintiffs From Public Benefit of a FAPE

To the extent Student Plaintiffs assert exclusion from the publicly available benefit of a FAPE, K.T. and N.P.'s receipt of an IEP from LAUSD belies this claim. While M.L. does not have an IEP at this time, the Loffmans, as is their right, decided to "forgo those services" and Parentally-Place M.L. at a private religious school. ECF, Dkt. No. 1, ¶90; 34 C.F.R. § 300.300(a)(3), (b)(3); 20 U.S.C. § 14 12(a)(10)(A). If the Loffmans desire to obtain a FAPE for M.L., they have the opportunity to request that LAUSD offer M.L. a FAPE at any time. 20 U.S.C. § 1412(a)(10)(ii)(I).

Courts have also held that the availability of public benefits to children with disabilities attending public schools versus private religious schools does not violate the Free Exercise Clause as "persons opting to attend private schools, religious or otherwise, must accept the disadvantages as well as any benefits offered by those schools." *Gary S. and Sylvie S. v. Manchester Sch. Dist.*, 374 F.3d 15 (1st Cir. 2004), *cert. denied*, 543 U.S. 988 (2004). Moreover, given the "traditional pattern that has so far prevailed of financial public education via the public schools" it would "be unreasonable and inconsistent to premise a free exercise violation upon Congress's mere failure to provide to disabled children attending private religious schools the identical financial and other benefits it confers upon those attending public schools." *Id*. Therefore, Student and Parent Plaintiffs cannot point

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

28

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

to exclusion from public benefits on this basis either.

### 3.   Education Code Sections 56361 and 56365 Contemplate Contractual Relationship, Not Merely Funding

School Plaintiffs allege exclusion from "receipt of crucial funding needed to educate students with disabilities," yet Education Code sections 56361 and 56365 do not merely contemplate funding[1]. Section 56361 establishes the continuum of program options for students with an IEP. Section 56365 discusses the provision of services from an NPS and the contracting that is the foundation for the relationship between the LEA And NPS. Payment of tuition is just one component of the contract between an LEA and NPS and provided in exchange for the IEP services provided to eligible students. Cal. Educ. Code § 56365(d). For these reasons, School Plaintiffs cannot reasonably claim exclusion from "funding" without a deeper analysis of the contractual relationship between LEAs and NPSs contemplated in the statutes. Nor should the Court be persuaded by any attempt to characterize the benefit here as merely funding.

### 4.   Non-Public School Certification is Not an Otherwise Available Public Benefit

In addition, the public benefits of both direct funding of placement in an NPS through the IEP process or reimbursement for placement at a private school as a form of rejection of the school district's offer of FAPE is available to Parent Plaintiffs whose children have a right to a FAPE. 20 U.S.C. § 1412(a)(10)(B) and (C). The limitation of these public benefits to students with disabilities enrolled in public schools does not in itself violate the Free Exercise Clause, as the Court has "said nothing of any supposed right of private or parochial schools to share with public schools in state largesse, on an equal basis or otherwise." *Norwood v.*

---

[1] Incidentally, LAUSD does not exclude Plaintiff Schools from funding for special education and related services through equitable service provision. 20 U.S.C. § 1412(a)(10)(A)(vi).

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

*Harrison*, 413 U.S. 455, 462 (1973).

LAUSD similarly does not exclude School Plaintiffs from otherwise available public benefits on the basis of their religious affiliation. LAUSD must timely and meaningfully consult with both religious private school representatives and parent representatives of Parentally-Placed private school students attending religious schools during the design and development of special education and related services for children, including the determination of proportionate funding and how, where, and by whom special education and related services will be provided for Parentally-Placed private school students, in compliance with the IDEA. 20 U.S.C. § 1412(a)(10)(A)(iii). School Plaintiffs can receive these equitable services in the same way as any other private school within LAUSD's boundaries.

State certification as an NPS is clearly distinct from the "generally available public benefits" discussed in recent precedent. In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, benefit at stake was state-provided grants to help nonprofit organizations pay for playground resurfacing. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017). In *Espinoza v. Montana Department of Revenue*, the benefit was a state-provided a tax credit to donors of certain organizations that awarded scholarships to selected students attending private schools. *Espinoza v. Montana Department of Revenue*, 140 S.Ct. 2246 (2020). In *Carson*, the public benefit in question was tuition assistance at a public or private school selected by the parent. *Carson*, 142 S.Ct. at 1993-94. These cases all involve funding or a grant, with individuals directing the public funding to a religious institution at their election or an entity applying for the funding for a non-religious project. These examples of direct, monetary support did not involve attendant government oversight, partnership, joint decision-making, or ongoing contracting.

NPS certification, on the other hand, does not solely trigger payment of tuition to the private school, as in the funding or grants in the public benefits cases. NPS certification is the merely the first step in an intensive contracting process,

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA 90802

30

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

which requires the negotiation of a master contract and the provision of special education and related services to a student under the ongoing supervision and direction of the school district. Cal. Educ. Code § 56366; 34 C.F.R. § 300.17 ("FAPE means special education and related services that – (a) are provided at public expense, under public supervision and direction.") The school district does not merely fund tuition at the private school; it establishes processes to oversee and evaluate placements at the NPS, methods for evaluating a student's progress, recordkeeping and documentation, and considering whether the student may be transitioned back to a public school setting. Cal. Educ. Code § 56366(a). This contract and involved, ongoing relationship cannot reasonably be compared to one-and-done funding or grants. Accordingly, the court should decline to consider NPS certification an "otherwise available public benefit."

Overall, as the NPS certification requirements are not an otherwise available public benefit, Plaintiffs cannot show that they suffered exclusion that amounted to a free exercise violation.

**D.  Plaintiffs Fail to State an Equal Protection Claim Under the U.S. Constitution**

Plaintiffs suggest that the NPS certification requirements restrict their ability to send their children to private religious schools of their choice. ECF, Dkt. No. 1, ¶¶206, 219. This argument fails for a number of reasons. First, Congress's decision to direct public funding to children with disabilities who attend public versus private religious schools does not impinge on a parent's right to direct their child's education. *Gary S.*, 374 F.3d at 20; *Strout v. Albanese*, 178 F.3d 57, 66 (1st Cir. 1999), cert denied 120 S.Ct. 329 (1999) (the "fundamental right [to direct child's upbringing and education] does not require the state to directly pay for a sectarian education"). "A further anomaly of such a holding would be that only persons…with a declared religious belief in the necessity of sending their children to private schools would be entitled under the First Amendment to the funding

31

1    sought." *Gary S.*, 374 F.3d at 20, fn.3.

2         Additionally, Parent Plaintiffs, like any other parents of a child with a

3    disability, have a right to participate in the IEP process and accept or decline

4    LAUSD's offer of a FAPE for their child. 34 C.F.R. § 300.321(a)(1); 34 C.F.R.

5    § 300.9. When a parent accepts the LEA's offer of FAPE, the child has access to

6    the full continuum of special education placements outlined in Education Code

7    section 56361, subject to the least restrictive environment requirements. 34 C.F.R.

8    § 300.115(a); Cal. Educ. Code § 56365(a). If Parent Plaintiffs decline LAUSD's

9    offer of FAPE, they can place their child in a private school, including any private

10   religious school, just like any other parent of a child with a disability. 20 U.S.C.

11   § 14 12(a)(10)(A). Alternatively, Parent Plaintiffs, like any other parent of a child

12   with a disability, may reject the offer of FAPE, place their child in a private school,

13   including a religious private school, and seek reimbursement from LAUSD. 20

14   U.S.C. § 1412(a)(10)(C)(iii). The Education Code requirements related to NPS

15   certification and contracting do not abrogate or burden those rights. To the extent

16   Parent Plaintiffs allege their children are not receiving a FAPE in their current

17   settings, they can utilize the administrative due process complaint procedures. 34

18   C.F.R. § 300.507. In no way has LAUSD denied Plaintiffs equal protection on the

19   basis of their religion.

20        **E.    If Strict Scrutiny is Applied, a Legitimate Government Interest**

21             **Exists in Avoiding Ongoing Governmental Oversight of Religious**

22             **Entities**

23        As the Education Code provides for a contractual, ongoing relationship

24   between LEAs and NPSs, the removal of the nonsectarian requirement would

25   violate the Establishment Clause through requiring direct governmental oversight

26   of a religious entity. The separation of Church from State "ha[s] been regarded

27   from the beginning as among the most cherished features of our constitutional

28   system." *Committee for Public Education v. Nyquist*, 413 U.S. 756, 796 (1973).

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

32

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

1   The "means by which state assistance flows to private schools is of some

2   importance" and a "material consideration in Establishment Clause analysis."

3   *Mueller v. Allen*, 463 U.S. 388, 399 (1983); *Nyquist*, 413 U.S. 756, 781 (1973). "It

4   is noteworthy that all but one of our recent cases invalidating state aid to parochial

5   schools have involved the direct transmission of assistance from the State to the

6   schools themselves." *Mueller*, 463 U.S. 399 at 399. Indeed, the policies maintaining

7   separation of Church and State attempt to prevent "that kind and degree of

8   government involvement in religious life that, as history teaches us, is apt to lead to

9   strife and frequently straining a political system to the breaking point." *Walz v. Tax

10  Comm'n*, 397 U.S. 664, 694 (1970).

11       The Court has found schemes providing far less state involvement in

12  religious schools than Plaintiffs propose here to result in "excessive entanglement

13  between government and religion." *Lemon v. Kurtzman*, 403 U.S. 602, 614 (1971).

14  In *Lemon*, the Court struck down a state's direct payment of a salary supplement to

15  private school teachers and reimbursement for the cost of teachers' salaries,

16  textbooks, and instructional materials in certain secular subjects. *Id.* at 607. In

17  *Levitt v. Committee for Public Ed.*, the Court found a state's reimbursement to

18  private schools for the costs of administering teacher-prepared examinations

19  unconstitutional. *Levitt v. Committee for Public Ed.*, 413 U.S. 472 (1973). In *Meek

20  v. Pittenger* and *Wolman v. Walter*, the Court found unconstitutional a state's loan

21  of instructional materials to private schools. *Meek v. Pittenger*, 421 U.S. 349

22  (1975); *Wolman v. Walter*, 433 U.S. 229 (1977). Notably, the Court found the

23  state's actions in these cases unconstitutional, yet they still primarily involved

24  funding or aid and nothing more.

25       The provision of tuition to NPSs under a contract with an LEA is not a

26  benefit program under which private citizens "direct government aid to religious

27  schools wholly as a result of their own genuine and independent private choice."

28  *Zelman v. Simmons-Harris*, 536 U.S. 639, 652 (2002). There are no intervening

33

private citizens here. It is a contract between the LEA and a private school that governs the conduct of these entities. Cal. Educ. Code § 56365(a). Removal of the nonsectarian NPS certification requirement would result in far more entanglement. An LEA would be required to enter into a legal contract with the private religious school (Cal. Educ. Code, § 56365(a)), monitor the NPS's compliance with implementation of the IEP, state standards, and the IDEA (34 C.F.R. § 300.147(a)), evaluate whether each student placed at the NPS is making appropriate educational progress (Cal. Educ. Code § 56366(a)(2)(B)), consider whether the needs of the student continues to be met at the NPS and whether the student needs to be transitioned to a public school setting (Cal. Educ. Code § 56366(a)(2)(B)(ii)), verify the NPS's compliance with staff training and NPS certification requirements (Cal. Educ. Code § 56366.1(a)(4)(D), and conduct onsite visits prior to placement of a student at the NPS and at least once each school year (Cal. Educ. Code § 56366.1(e)(3).) These oversight requirements are in addition to regular interactions the LEA and NPS must have to develop, update, and implement a student's IEP. 20 U.S.C. § 1414(d)(3)-(4).

This breadth and depth of partnership between the LEA and NPS would create immense, unresolvable challenges for the separation of church and state. "The potential for conflict 'inheres in the situation'" because the LEA would be "constitutionally compelled to assure that the state supported activity is not being used for religious indoctrination." *Levitt*, 413 U.S. at 480, quoting *Lemon*, 403 U.S. at 617, 619. The representations Plaintiffs make in the Complaint about their instructional program and mission reveal that any separation of secular and non-secular instruction would be impossible. School Plaintiffs do not attempt to hide their goal of seeking to "provide a distinctively Orthodox Jewish education to children with disabilities" and that "the inculcation and transmission of Jewish religious beliefs and practices to children is the very reason that Shalhevet and Yavneh exist." ECF, Dkt. No. 1, ¶¶76, 152. As "Shalhevet's and Yavneh's religious

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA 90802

34

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

beliefs and identity permeate their entire school and mission," separation of public and private religious interests and monitoring of the provision of special education to students at these religious schools would be impossible. ECF, Dkt. No. 1, ¶177.

This overt goal for religious education of students with disabilities would undermine the NPS/LEA relationship and disrupt the ability of the LEA to provide students with a FAPE. Children, and particularly children with disabilities, could be particularly susceptible to the influence of religious education at school. *See Lee v. Weisman*, 505 U.S. 577, 592, 605 n.6 (1991) ("[T]here are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools.") School Plaintiffs' desire for religious instruction and inculcation vis-à-vis NPS status is not subtle. The religious identify of NPSs could also lead to IEP team discrimination on the basis of religion as parents or IEP team members attempt to steer children into NPSs that support particular religions.

Further, LAUSD, as a governmental entity, has a compelling interest in maintaining the separation of church and state and compliance with state and federal law in this area. *See*, *e.g.*, U.S. Department of Education, *Guidance on Constitutionally Protected Prayer and Religious Expression in Public Elementary and Secondary Schools* (May 15, 2023). The potential for overt religious education with the removal of the "nonsectarian" requirement from NPS certification would also violate Section 8 of Article IV of the California Constitution, which states, "Nor shall any sectarian or denominational doctrine be taught or instruction thereon permitted, directly or indirectly, in any of the common schools of this State."

Maintaining the nonsectarian requirement for NPSs ensures the separation of Church and State and avoids the entanglement and monitoring concerns that would otherwise arise. The nonsectarian requirement is also narrowly tailored to these significant interests. As a result, the Court should uphold the nonsectarian NPS certification requirement under a strict scrutiny analysis.

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

## IV.    CONCLUSION

While Plaintiffs make much of alleged exclusion from public benefits and infringement on their free exercise of religion, Plaintiffs cannot ignore the rights they maintain to direct the religious upbringing and education of their children, accept or reject an offer of FAPE from LAUSD, and place their children with disabilities who are eligible for special education and related services under the IDEA in a private school if they so choose. LAUSD's compliance with Education Code requirements concerning NPS certification requirements does not impede those rights. Plaintiffs' Complaint should be dismissed on all counts or at least with respect to LAUSD as a party.

DATED: May 23, 2023

DANNIS WOLIVER KELLEY
SUE ANN SALMON EVANS
MEAGAN M. KINSEY


By: _/s/ Sue Ann Salmon Evans_
SUE ANN SALMON EVANS
Attorneys for Defendants
Los Angeles Unified School District
and Anthony Aguilar

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Los Angeles Unified School District and Anthony Aguilar, certifies that this brief contains 25 pages, which complies with Judge Staton's 25-page limit for memoranda of points and authorities.

DATED: May 23, 2023                    DANNIS WOLIVER KELLEY
                                       SUE ANN SALMON EVANS
                                       MEAGAN M. KINSEY


                                       By:  /s/ Sue Ann Salmon Evans
                                       SUE ANN SALMON EVANS
                                       Attorneys for Defendants
                                       Los Angeles Unified School District
                                       and Anthony Aguilar

DEFENDANTS LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY
AGUILAR'S MOTION TO DISMISS PER F.R.C.P. 12(b)(6)

DWK 4022227v1

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802