SUE ANN SALMON EVANS, State Bar No. 151562
sevans@DWKesq.com
MEAGAN M. KINSEY, State Bar No. 307457
mkinsey@DWKesq.com
Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA  90802
Telephone: 562.366.8500
Facsimile: 562.366.8505

Attorneys for Defendants
Los Angeles Unified School District and Anthony
Aguilar

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAYA LOFFMAN and JONATHAN LOFFMAN, on their own behalf and on behalf of their minor child M.L.; FEDORA NICK and MORRIS TAXON, on their own behalf and on behalf of their minor child K.T.; SARAH PERETS and ARIEL PERETS, on their own behalf and on behalf of their minor child N.P.; JEAN & JERRY FRIEDMAN SHALHEVET HIGH SCHOOL; and SAMUEL A. FRYER YAVNEH HEBREW ACADEMY,<br><br>              Plaintiffs,<br><br>       v.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION; TONY THURMOND, in his official capacity as Superintendent of Public Instruction; LOS ANGELES UNIFIED SCHOOL DISTRICT; and ANTHONY AGUILAR, in his official capacity as Chief of Special Education, Equity, and Access,<br><br>              Defendants. | Case No.  2:23-cv-01832-JLS-MRW<br><br>**LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Judge:    Hon. Josephine L. Staton**<br><br>Date:  July 21, 2023<br>Time: 10:30 a.m.<br>Courtroom: 8A<br><br>**Complaint Filed:  March 13, 2023**<br><br>**Trial Date: None** |

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ......................................................................... 2

TABLE OF AUTHORITIES .................................................................. 4

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 10

I.       INTRODUCTION .................................................................. 10

II.      SUMMARY OF PLAINTIFFS' CLAIMS ............................... 10

III.     APPLICABLE LEGAL STANDARD ...................................... 11

IV.      ARGUMENT ......................................................................... 12

    A.       Plaintiffs Are Unlikely to Succeed on the Merits ................ 12

        1.       Plaintiffs Lack Article III Standing Sufficient to Bring Their Claims ........................................................ 12

            a.       Plaintiffs M.L. and Loffmans Lack Standing Because M.L. Is Not a Child With a Disability Under the IDEA ........................... 13

            b.       Plaintiffs K.T., Taxon Family, N.P., and Perets Are Unable to Establish Standing ........ 15

            c.       Plaintiffs Shalhevet and Yavneh Are Not Able and Ready to Apply for NPS Status and Thus Lack Standing ........................................ 17

        2.       Plaintiffs are Unable to Support their Claim for Violation of the Free Exercise Clause of the U.S. Constitution ............. 20

            a.       Plaintiffs Have Not Been Denied Any Public Benefits ..................................................... 20

            b.       LAUSD Did Not Exclude Student Plaintiffs From Public Benefit of a FAPE ...................... 21

            c.       Plaintiff' Relief Sought Under Education Code Section 56361 and 56365 Require A Contractual Relationship .................................................. 22

        3.       Plaintiffs Are Unable to State a Claim Under the Equal Protection Clause ........................................................ 23

        4.       Legitimate Government Interest Exists ........................ 24

    B.       Public Policy/ Improper Form of Injunction ...................... 28

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

2

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1.   The Injunctive Relief Sought by Plaintiffs is Too Vague
to be Enforceable .................................................................... 28

2.   Injunctive Relief Cannot Be Used to Control the
Discretion of Public Officials ................................................ 30

3.   Plaintiffs' Injunctive Relief is Barred by LAUSD's
Sovereign Immunity ............................................................... 31

V.   CONCLUSION ..................................................................................... 33

CERTIFICATE OF COMPLIANCE ................................................................. 34

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

3

DWK 4022227v1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*,
  458 U.S. 176 (1982) ....................................................................................31

*Belanger v. Madera Unif. Sch. Dist.*,
  963 F.2d 248 (9th Cir. 1992) ...............................................................31, 32

*Blackmon v. Springfield R-XII Sch. Dist.*,
  198 F.3d 648 (8th Cir. 1999) ....................................................................16

*C.N. v. Wolf*,
  410 F. Supp. 2d 894 (C.D. Cal. 2005) .......................................................32

*Carney v. Adams*,
  141 S.Ct. 493 (2020)...............................................................14, 17, 18, 19

*Carson v. Makin*,
  142 S.Ct. 1987 (2022) ........................................................................20, 25

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
  508 U.S. 520, 546 (1993) ..........................................................................20

*Cole v. Oroville Union High Sch. Dist.*,
  228 F.3d 1092 (9th Cir. 2000) ...................................................................13

*Committee for Public Education v. Nyquist*,
  413 U.S. 756 (1973) ...................................................................................24

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ...................................................................................13

*Edwards v. Aguillard*,
  482 U.S. 578 (1987) ...................................................................................27

*Farris v. Seabrook*,
  677 F.3d 858 (9th Cir.2012) ......................................................................11

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) .....................................................................12

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

*Gary S. and Sylvie S. v. Manchester Sch. Dist.*,
    374 F.3d 15 (1st Cir. 2004), *cert. denied*, 543 U.S. 988 (2004) .................22, 23

*Groves v. Dept. of Corr.*,
    811 N.W.2d 563 (2011)...................................................................................30

*John Doe #1 v. Veneman*,
    380 F.3d 807 (5th Cir. 2004) .........................................................................28

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*,
    580 U.S. 386 (2017) .......................................................................................31

*Kutasi v. Las Virgenes Unified Sch. Dist.*,
    494 F.3d 1162 (9th Cir. 2007) .......................................................................17

*L.J. by and through Hudson v. Pittsburgh Unified Sch. Dist.*,
    850 F.3d 996 (9th Cir. 2017) .........................................................................13

*Lee v. Weisman*,
    505 U.S. 577 (1991) .......................................................................................27

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) .......................................................................................25

*Levitt v. Committee for Public Ed.*,
    413 U.S. 472 (1973) ..................................................................................25, 26

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................12, 15

*McClain v. Lufkin Indus., Inc.*,
    519 F.3d 264 (5th Cir. 2008) .........................................................................29

*Meek v. Pittenger*,
    421 U.S. 349 (1975) .......................................................................................25

*Meghrig v. KFC W., Inc.*,
    516 U.S. 479 (1996) .......................................................................................12

*Ms. S. v. Vashon Island Sch. Dist.*,
    337 F.3d 1115 (9th Cir. 2003) .......................................................................16

*Mueller v. Allen*,
    463 U.S. 388 (1983) .......................................................................................24

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

5

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Queen City Constr., Inc. v. City of Rochester*,
  604 N.W.2d 368 (1999) ................................................................... 30

*Sato v. Orange Cty. Dep't of Educ.*,
  861 F.3d 923 (9th Cir. 2017) .......................................................... 31, 32

*Schmidt v. Lessard*,
  414 U.S. 473 (1974) ......................................................................... 29

*Scott v. Schedler*,
  826 F.3d 207 (5th Cir. 2016) ........................................................... 29

*Simon v. Eastern Ky. Welfare Rights Organization*,
  426 U.S. 26 (1976) ............................................................. 12, 13, 19

*Stanley v. Univ. of S. California*,
  13 F.3d 1313 (9th Cir. 1994) ........................................................... 12

*Strout v. Albanese*,
  178 F.3d 57 (1st Cir. 1999), cert denied 120 S.Ct. 329 (1999) ....... 23

*U.S. Philips Corp. v. KBC Bank N.V.*,
  590 F.3d 1091 (9th Cir. 2010) ......................................................... 11

*U.S. Steel Corp. v. United Mine Workers of Am.*,
  519 F.2d 1236 (5th Cir.1975) .......................................................... 28

*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981) ......................................................................... 11

*Van Orden v. Perry*,
  545 U.S. 677 (2005) ......................................................................... 27

*Walz v. Tax Comm'n*,
  397 U.S. 664 (1970) ......................................................................... 24

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58 (1989) ........................................................................... 31

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................. 11

*Wolman v. Walter*,
  433 U.S. 229 (1977) ......................................................................... 25

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

6

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Zelman v. Simmons-Harris*,
    536 U.S. 639 (2002) ............................................................................. 25

**State Cases**

*Kirchmann v. Lake Elsinore Unified Sch. Dist.*,
    83 Cal. App. 4th 1098 (2000) .............................................................. 32

*O'Connell v. Superior Court*,
    141 Cal.App.4th 1452 (2006) ............................................................... 11

*Shapell Industries, Inc. v. Governing Board*,
    1 Cal.App.4th 218 (1991) ..................................................................... 30

*Tahoe Keys Prop. Owners' Assn. v. State Water Res. Control Bd.*,
    23 Cal.App.4th 1459 (1994) ................................................................. 12

**Constitutional Provisions**

California Constitution art. IV § 8 ............................................................. 28

U.S. Constitution art. III .............................................................. 10, 12, 13

U.S. Constitution art. amend. XI ............................................................... 31

**Federal Statutes**

20 U.S.C. § 1412(a)(5)(A) ........................................................................ 16

20 U.S.C. § 1412(a)(10)(A) ................................................................. 21, 23

20 U.S.C. § 1412(a)(10) ........................................................................... 21

20 U.S.C. § 1412(a)(10)(ii)(I) ................................................................... 21

20 U.S.C. § 1412(a)(10)(A)(vi) ................................................................ 22

20 U.S.C. § 1412(a)(10)(C)(iii) ................................................................ 23

20 U.S.C. § 1414(d)(3) ............................................................................ 26

20 U.S.C. § 1414(d)(4) ............................................................................ 26

20 U.S.C. § 1415(a) ................................................................................. 14

42 U.S.C. § 1983 ...................................................................................... 32

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DWK 4022227v1

**State Statutes**

Cal. Educ. Code § 220 ....................................................................................18

Cal. Educ. Code § 56034 ...............................................................................16

Cal. Educ. Code § 56360 ...............................................................................13

Cal. Educ. Code § 56361 ............................................................16, 20, 22, 23

Cal. Educ. Code § 56365 ...................................................11, 19, 20, 22, 29

Cal. Educ. Code § 56365(a) ..........................................16, 20, 23, 25, 26

Cal. Educ. Code § 56365(d) ........................................................................22

Cal. Educ. Code § 56366 ..........................................................11, 19, 29

Cal. Educ. Code § 56366(a)(2)(B) ...............................................................26

Cal. Educ. Code § 56366(a)(2)(B)(ii) ..........................................................26

Cal. Educ. Code § 56366 et seq. ...................................................................19

Cal. Educ. Code § 56366.1(a) .......................................................................19

Cal. Educ. Code § 56366.1(a)(1) ..................................................................19

Cal. Educ. Code § 56366.1(a)(3) ..................................................................19

Cal. Educ. Code § 56366.1(a)(4)(D) .............................................................26

Cal. Educ. Code § 56366.1(a)(5) ..................................................................19

Cal. Educ. Code § 56366.1(e)(3) ..................................................................26

Cal. Educ. Code § 56366.2(a) .......................................................................19

**Rules**

Fed. R. Civ. P. 12(b)(1) .........................................................................31, 32

Fed. R. Civ. P. 65(d)(1) .........................................................................28, 30

**Regulations**

34 C.F.R. § 300.8(a)(1) ................................................................................13

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DWK 4022227v1

34 C.F.R. § 300.8(c)(1)(1)(i) ................................................................... 14

34 C.F.R. § 300.9 ..................................................................................... 23

34 C.F.R. § 300.115(a) ............................................................................ 23

34 C.F.R. § 300.146(a) ............................................................................ 13

34 C.F.R. § 300.146(b) ............................................................................ 18

34 C.F.R. § 300.146(c) ............................................................................ 18

34 C.F.R. § 300.147(a) ............................................................................ 26

34 C.F.R. § 300.300(a)(3) ....................................................................... 21

34 C.F.R. § 300.300(b)(3) ....................................................................... 21

34 C.F.R. § 300.321(a)(1) ....................................................................... 23

34 C.F.R. § 300.507 ................................................................................. 24

34 C.F.R. § 300.507(a) ............................................................................ 17

**Other Authorities**

U.S. Department of Education, *Guidance on Constitutionally Protected Prayer and Religious Expression in Public Elementary and Secondary Schools* (May 15, 2023) ............................................ 28

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DWK 4022227v1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

As a tool in the court's legal toolbox, a preliminary injunction is designed to hold the status quo in place while the parties resolve their claims. In some extreme situations, a preliminary injunction may be mandatory in nature, going beyond the status quo to enforce positive action to protect a party from harm.

The requested relief here is a beast of another character entirely. Plaintiffs ask this Court to wade into the midst of the complex and highly personal process of providing special education services to Plaintiffs' children. The Court is then asked to place these students at private schools which provide a Jewish education. How the Court should go about this maneuver is less clear.

The barriers to the requested preliminary injunction are numerous. To begin, Plaintiffs have yet to demonstrate that they have a chance of succeeding in the underlying lawsuit, and questions arise as to whether they have even pled sufficient Article III standing to bring their claims. Further, the substantive claims made by Plaintiffs contain a number of fatal defects.

However, most concerning of all is the nature of the injunction itself. For the Student Plaintiffs, the preliminary injunction would require the Court to pick between one of three potential options to satisfy Plaintiffs' desire to be placed at a Jewish nonpublic school, each of which has distinct processes and requirements. For the School Plaintiffs, the requested relief would require the Court to hold LAUSD's hand through a complex negotiation and application process for each School Plaintiff – a process which the School Plaintiffs have not even begun. This is not the role of a court and not a proper form of a preliminary injunction.

Due to its numerous defects, Plaintiffs' Motion for Preliminary Injunction must be denied.

## II.   SUMMARY OF PLAINTIFFS' CLAIMS

Plaintiffs allege LAUSD violated the Free Exercise Clause in refusing to

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA  90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DWK 4022227v1

contract with religious schools as non-public schools ("NPS") as a means of providing Free Appropriate Public Education ("FAPE"). ECF, Dkt. No. 1, ¶180. Plaintiffs further suggest that LAUSD has discretion under the Education Code to waive the NPS certification requirements yet refused to waive the "nonsectarian" requirement for School Plaintiffs. ECF, Dkt. No. 1, ¶¶199-200. Plaintiffs further claim LAUSD denied them equal protection under the law on the basis of religion in prohibiting Plaintiffs from using public funds for their children at religious schools. ECF, Dkt. No. 1, ¶206. Plaintiffs' arguments fail on all counts.

Plaintiffs seek a preliminary injunction "barring defendants from enforcing the "nonsectarian" requirement in Cal. Educ. Code §§ 56365 and 56366." ECF, Dkt. No. 28-1, p. 24.

## III.   APPLICABLE LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The extraordinary nature of this remedy is due to the "very purpose of a preliminary injunction, which is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010); *See also Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.")  "A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook,* 677 F.3d 858, 864 (9th Cir.2012) (citing *Winter,* 555 U.S. at 20). Additionally, "[i]t is well established that when injunctive relief is sought, consideration of public policy is not only permissible but mandatory." (*O'Connell v. Superior Court*, 141 Cal.App.4th 1452, 1471 (2006)  [citations omitted].)

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA  90802

11

DWK 4022227v1

Moreover, a heightened showing is necessary to enjoin a public agency or officer from performing its official duties. (*Tahoe Keys Prop. Owners' Assn. v. State Water Res. Control Bd.*, 23 Cal.App.4th 1459, 1471-73 (1994).) An injunction may either be mandatory "*i.e.,* one that orders a responsible party to "take action"…, or a prohibitory injunction, *i.e.,* one that "restrains" a responsible party." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Where a plaintiff seeks a mandatory injunction, they "must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

Plaintiffs fail to carry this heavy burden.

## IV. ARGUMENT

### A. Plaintiffs Are Unlikely to Succeed on the Merits

#### 1. Plaintiffs Lack Article III Standing Sufficient to Bring Their Claims

Article III of the U.S. Constitution limits the jurisdiction of federal courts to only those cases that present an actual case or controversy. Plaintiffs bear the burden of proving they have this "irreducible constitutional minimum of standing" to proceed: 1) an injury in fact, 2) a causal connection between the injury and the conduct complaint of, and 3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). An injury in fact is an "invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. at 560, quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The second element, the causal connection, requires that this injury be "fairly…trace[able] to the challenged action of the defendant, and not…the] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42

12

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

(1976). Finally, Plaintiffs must show a likelihood, as opposed to mere speculation, that the injury will be "redressed by a favorable decision." *Id*. at 38, 43.

If Plaintiffs lack standing to pursue any claims, the Court is without jurisdiction to resolve them and must dismiss the claims. *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000), citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (standing is a jurisdictional issue deriving from the case or controversy requirement of Article III); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (a plaintiff is required to "demonstrate standing for each claim he seeks to press and for each form of relief that is sought").

### a.      Plaintiffs M.L. and Loffmans Lack Standing Because M.L. Is Not a Child With a Disability Under the IDEA

The Education Code sections referencing the nonsectarian requirement for NPS certification only apply to students whom school districts have placed at private schools through the Individual Education Program ("IEP") process. *See* Cal. Educ. Code § 56360 (continuum of program options is available for "individuals with exceptional needs for special education and related services, as required by the [IDEA]"); 34 C.F.R. § 300.146(a) (outlining Local Education Agency ("LEA") responsibilities for "child with a disability who is placed in or referred to a private school or facility by a public agency"). A "child with a disability" under the Individuals with Disabilities Education Act ("IDEA") meets one of the thirteen eligibility criteria, as determined by the LEA, and "who, by reason thereof, needs special education and related services." 34 C.F.R. § 300.8(a)(1). Plaintiffs are unable to show that Plaintiff M.L. meets this eligibility prerequisite.

M.L.'s medical diagnosis of autism does not necessarily qualify him as a child with a disability under the IDEA. A medical diagnosis alone is insufficient to automatically qualify a child for special education services. *L.J. by and through Hudson v. Pittsburgh Unified Sch. Dist.*, 850 F.3d 996, 1003 (9th Cir. 2017) ("Even

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

if a child has such a disability, he or she does not qualify for special education services if support provided through the regular school program is sufficient.") To meet the eligibility criteria under the IDEA, autism must both "significantly affect[] verbal and nonverbal communication and social interaction" and "adversely affect[] a child's educational performance." 34 C.F.R. § 300.8(c)(1)(1)(i). LAUSD has not had the opportunity to evaluate M.L. for special education or determine whether he meets the eligibility criteria. Declaration of Anthony Aguilar ("Aguilar Decl."), ¶14. In fact, LAUSD has no record of Chaya and Jonathan Loffman ever contacting LAUSD to request an assessment for a child. *Id.* Without eligibility for special education under the IDEA, M.L. would not even have the opportunity to be placed at an NPS. Therefore, M.L. cannot reasonably claim an injury in fact related to the nonsectarian NPS certification requirement.

By the same token, the Loffmans do not have an injury in fact because they are not parents of a child with a disability as defined in the IDEA. Without this qualification, the Loffmans do not have a guarantee of procedural safeguards related to the provision of a FAPE. 20 U.S.C. § 1415(a). Further, the Loffmans would not be members of an IEP team who would make determinations about M.L.'s placement at an NPS, so the nonsectarian NPS certification requirements have no impact on the NPS placement options available to them.

M.L. and the Loffmans also cannot identify any link between any LAUSD action and the nonsectarian NPS certification requirement. The Loffmans have not even sought an offer of FAPE from LAUSD nor have they provided LAUSD with a notice of unilateral placement to place M.L. at a private school and seek reimbursement from LAUSD pursuant to the IDEA. Aguilar Decl., ¶¶14, 38. Instead, M.L. and the Loffmans present just an "abstract generalized grievance," which does not establish standing. *Carney v. Adams*, 141 S.Ct. 493, 499 (2020).

Finally, no redressability exists for M.L. and the Loffmans. Because M.L. is not eligible for special education, a change to the nonsectarian NPS certification

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA 90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1    requirement would result in no change for M.L. or the Loffmans. For these reasons,

2    Plaintiffs M.L. and Loffmans lack standing to pursue this case.

3              b.      **Plaintiffs K.T., Taxon Family, N.P., and Perets Are**

4                      **Unable to Establish Standing**

5         Student Plaintiffs K.T. and N.P. are unable to show that they suffered an

6    "actual or imminent" injury extending beyond the "conjectural or hypothetical" that

7    could form the basis for an injury in fact. *Lujan*, 504 U.S. at 560. Neither K.T. nor

8    N.P. require placement in an NPS.  Their respective IEP teams also are not

9    considering such a change in placement that would be impacted by the definition or

10   certification requirements of an NPS.

11        Both K.T and N.P. are currently placed in settings that are less restrictive

12   than placement at an NPS. The current IEP for K.T. reflects placement in a general

13   education classroom at a comprehensive charter middle school with RSP support

14   for reading, writing, and math, with overall general education setting participation

15   for 67% of the school week. Aguilar Decl., ¶¶15, 16. This placement is significantly

16   less restrictive than an NPS. *Id*.

17        Similarly, the current IEP for N.P. reflects placement in a special day class

18   ("SDC") at a comprehensive LAUSD middle school. Aguilar Decl., ¶17.  N.P.

19   participates in the general education environment for 25% of the school year.

20   Aguilar Decl., ¶18. This placement is significantly less restrictive than placement at

21   an NPS. *Id*. Even if the IEP teams for K.T. or N.P. considered or recommended

22   NPS placement in the future, this type of "'some day' intentions – without any

23   description of concrete plans, or indeed even any specification of when the some

24   day will be – do not support a finding of the 'actual or imminent' injury" that is

25   necessary to demonstrate standing. *Lujan*, 504 U.S. at 564. Any placement change

26   could not be "actual or imminent" because LAUSD is required to comply with the

27   IDEA's least restrictive environment requirement. "To the maximum extent

28   appropriate," a child with a disability must be "educated with children who are not

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

15

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

disabled." 20 U.S.C. § 1412(a)(5)(A). A child may be removed from a regular educational environment "only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id*. An NPS is one of the most restrictive settings and can be offered only "if no appropriate public education program is available." Cal. Educ. Code §§ 56034, 56361, 56365(a).

In LAUSD, in order to change a student's placement to an NPS, the IEP team must follow a specific, multi-step process. Aguilar Decl., ¶19. The IEP team must evaluate the student's current levels of functioning, discuss the continuum of placement options and the least restrictive environment for the particular student, and consider potential harmful effects of a placement change. *Id*. Neither K.T. nor N.P.'s IEP teams have even begun this process with respect to consideration of NPS placement. Aguilar Decl., ¶¶15-18.  This process mirrors the stringent limitation in the Education Code on NPS placements to only situations where "no appropriate public education program is available" and further extends the "some day" nature of NPS placement for K.T. and N.P. Cal. Educ. Code § 56365(a).

The injury in fact analysis is also problematic for the Taxon and Perets families. Parental participation in the IEP process "does not require districts 'simply to accede to parents' demands without considering any suitable alternatives.'" *Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648 (8th Cir. 1999); *see Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115 (9th Cir. 2003) (District "has no obligation to grant [parent] a veto over any individual IEP provision."). In consideration of the parent's role on an IEP team, Parent Plaintiffs could not demand placement in an NPS for K.T. or N.P. unless the IEP team conducted LAUSD's extensive process for placement in a more restrictive environment, and the IEP team agreed that "no appropriate public education program [was] available." Aguilar Decl., ¶19; Cal. Educ. Code § 56365(a). Therefore, Parent Plaintiffs are unable to show an injury in fact because K.T. and N.P.'s IEP teams

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1  have not recommended NPS placement.

2      Both the IEP and due process complaint resolution processes further impede

3  these Plaintiffs from showing causation between LAUSD's alleged unconstitutional

4  conduct and their alleged injury. LAUSD's compliance with the Education Code's

5  requirement to enter into a contract with only certified NPSs does not impact

6  Plaintiffs because their IEP teams are not currently considering NPS placement.

7  Aguilar Decl., ¶¶15-18. A removal of the "nonsectarian" NPS certification

8  requirement would not change Student Plaintiffs' placements. In any event, if

9  Plaintiff Parents disagree with the IEP team's recommendations concerning

10  placement for K.T. or N.P., the IDEA requires them to initiate a due process

11  hearing prior to filing any civil action. 34 C.F.R. § 300.507(a). Plaintiff Parents'

12  concerns about their children's receipt of a FAPE in LAUSD is properly resolved

13  through a due process complaint and not the present claim. *Kutasi v. Las Virgenes*

14  *Unified Sch. Dist.*, 494 F.3d 1162, 1168 (9th Cir. 2007) ("[I]f the injury could be

15  redressed to any degree by the IDEA's administrative procedures—or if the IDEA's

16  ability to remedy an injury is unclear—then exhaustion is required.") While the Perets

17  have filed a due process complaint against LAUSD in the past, Plaintiff Parents do not

18  have any currently pending due process complaints against LAUSD. Aguilar Decl.,

19  ¶¶35, 37. Parent Plaintiffs also have not requested that LAUSD place their children

20  at an NPS or provided notice of an intention to unilaterally place their children at a

21  private school and seek reimbursement from LAUSD pursuant to the IDEA.

22  Aguilar Decl., ¶¶36, 38.  Clearly, Student and Parent Plaintiffs lack standing.

23          **c.    Plaintiffs Shalhevet and Yavneh Are Not Able and**

24                  **Ready to Apply for NPS Status and Thus Lack**

25                  **Standing**

26      Similarly, School Plaintiffs cannot show they are "able and ready" to apply

27  for NPS status in the "reasonably foreseeable future," which evidences a lack of

28  standing. *Carney*, 141 S.Ct. at 500. In *Carney v. Adams*, an aspiring judge with

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DWK 4022227v1

independent political affiliation claimed that the political party balance requirement for membership on Delaware state courts created an injury in fact since he did not align with one of the major political parties. *Id*. at 497. The Court found this argument suspect because the *Carney* plaintiff was not truly "able and ready" to apply for a judgeship in the "reasonably foreseeable future" and upheld the dismissal of the case for lack of standing. *Id*. at 501. In analyzing the aspiring judge's potential injury in fact, the Court noted that plaintiff could not show 1) "any actual past injury," 2) "reference to an anticipated timeframe," 3) prior applications for a judicial position, 4) "prior relevant conversations," or 5) "other preparations or investigations." *Id*. School Plaintiffs have similar deficiencies, asking the Court to "rel[y] on a bare statement of intent alone against the context of a record that shows nothing more than an abstract generalized grievance." *Id*. at 502.

The statutory requirements for NPS certification are extensive and School Plaintiffs are unable to demonstrate compliance with key elements. A child with a disability placed at a private school through the IEP process must be "provided an education that meets the standards that apply to education provided by the [state educational agency] and LEAs" and "ha[ve] all of the rights of a child with a disability who is served by a public agency." 34 C.F.R. § 300.146(b), (c). One right that public school children and any children attending a "program or activity conducted by an educational institution that receives, or benefits from, state financial assistance" have in California is the right to non-discrimination on the basis of a variety of protected characteristics, including religion. Cal. Educ. Code § 220. However, if certified as NPSs, School Plaintiffs plan to serve only "Jewish children with disabilities." ECF, Dkt. No. 1, ¶154; ECF, Dkt. No. 28-5, ¶14; ECF, Dkt. No. 28-6, ¶13.  This intention to serve students of only one religion explicitly violates the state non-discrimination requirements and makes School Plaintiffs unable and not ready to comply with the NPS requirements. Cal. Educ. Code § 220. School Plaintiffs are unable to show their capacity to actually serve students

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

with disabilities or preparations or investigations on that front. This serving of children with disabilities is the crux of the Education Code requirements concerning NPSs. Cal. Educ. Code § 56365. An NPS must provide "special education and designated instruction and services" from "appropriately qualified staff," including an administrator with appropriate credentialing. Cal. Educ. Code §§ 56366.1(a)(1), (a)(3), (a)(5). School Plaintiffs do not claim that they currently provide or are capable of providing these types of services to students with disabilities or are working towards those capabilities under any specific time frame. Incidentally, some credentialing components require at least two years of experience working with students with disabilities, so cannot be obtained in the "reasonably foreseeable future." *Id.*; *Carney*, 141 S.Ct. at 500.

School Plaintiffs' standing also breaks down with respect to causation related to LAUSD. The NPS certification process occurs separately from LAUSD, who has no control over the certification requirements, the application process, the certification itself, or the renewal or revocation of certification. Aguilar Decl., ¶23; Cal. Educ. Code § 56366 et seq. The Legislature, not LAUSD, created the NPS certification requirements outlined in the Education Code. Cal. Educ. Code § 56366. The state Superintendent of Public Instruction, not LAUSD, processes NPS certification requests through forms provided by the CDE. Cal. Educ. Code § 56366.1(a). The Superintendent of Public Instruction, not LAUSD, is responsible for waiver of any NPS certification requirements. Cal. Educ. Code § 56366.2(a). Contrary to the allegation in the Complaint, LAUSD has no control over how the Superintendent processes waiver requests. ECF, Dkt. No. 1, ¶199; Aguilar Decl., ¶22. School Plaintiffs' alleged injury related to the NPS certification requirements is not traceable to any LAUSD action and instead the result of the independent action of the state Superintendent and CDE. *See Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. at 41-42.

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Similarly, the master contracting process interferes with School Plaintiffs' potential for redressability. NPS certification is not an avenue for automatic funding from an LEA. The Education Code requires LEAs to enter into master contracts as a condition of this funding. Cal. Educ. Code § 56365(a). LAUSD cannot compel a private entity to contract with it, even if parent or student desire placement at a particular NPS. Aguilar Decl., ¶27. In the past, NPSs have declined to enter into a master agreement with LAUSD due to a variety of reasons, including terms of the master agreement, lack of program capacity, and rates offered for nonpublic school placement. Aguilar Decl., ¶25. This intervening step of the master contracting negotiation process makes automatic redressability of School Plaintiffs' alleged injury – lack of funding for students with disabilities – impossible.

Taken together, these factors demonstrate the School Plaintiffs lack of standing. The Court should dismiss this case, or LAUSD as a party, on that basis.

### 2.   Plaintiffs are Unable to Support their Claim for Violation of the Free Exercise Clause of the U.S. Constitution

The First Amendment prohibits both any law "respecting an establishment of religion," (the Establishment Clause) and any law "prohibiting the free exercise thereof" (Free Exercise Clause). When a law "excludes religious observers from otherwise available public benefits," the government entity must demonstrate that the law is "narrowly tailored" to "advance 'interests of the highest order'." *Carson v. Makin*, 142 S.Ct. 1987, 1996 (2022); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993) (citations and quotations omitted). Plaintiffs cannot show that LAUSD excluded them from an otherwise available public benefit, which causes their Free Exercise Claim to fail.

### a.   Plaintiffs Have Not Been Denied Any Public Benefits

Plaintiffs consistently and generally assert they have been excluded from Education Code sections 56361 and 56365 on account of their religion. ECF, Dkt. No. 1, ¶178. The plain language of these Education Code sections address the

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

continuum of special education program options and the requirements for LEAs and NPSs in contracting for the provision of special education services. Yet, Plaintiffs are not excluded from this continuum of special education programming or the ability to attend an NPS.  Private school placements are available to all parents of children with disabilities through the IEP process or parental choice. 20 U.S.C. § 1412(a)(10). M.L. has yet to contact LAUSD about attendance at LAUSD, let alone eligibility for special education or one of the options for placement at a private school. ECF, Dkt. No. 28-2, ¶18; Aguilar Decl., ¶ 14. And while K.T. and N.P. attend LAUSD schools, they do not currently seek placement at an NPS[1]. Aguilar Decl., ¶¶34, 36. As such, no public benefits have been denied to date.

School Plaintiffs, on the other hand, characterize their "exclusion" as public funding for private religious schools. ECF, Dkt. No. 1, ¶¶160, 170. In reality, School Plaintiffs have made no effort to seek NPS certification. Aguilar Decl., ¶28. Doing so would require an application, LAUSD's review of the application, and a request from the School Plaintiff to enter into a master agreement with LAUSD. None of these steps have been taken to date. *Id.*

### b. LAUSD Did Not Exclude Student Plaintiffs From Public Benefit of a FAPE

To the extent Student Plaintiffs assert exclusion from the publicly available benefit of a FAPE, K.T. and N.P.'s receipt of an IEP from LAUSD belies this claim. Aguilar Decl., ¶¶15-18. While M.L. does not have an IEP at this time, the Loffmans, as is their right, decided to "forgo those services" and place M.L. at a private religious school outside of the IEP process. Aguilar Decl., ¶14; ECF, Dkt. No. 1, ¶90; ECF, Dkt. 28-2, ¶ 18; 34 C.F.R. § 300.300(a)(3), (b)(3); 20 U.S.C. § 14 12(a)(10)(A). If the Loffmans desire to obtain a FAPE for M.L., they have the opportunity to request that LAUSD offer M.L. a FAPE at any time. 20 U.S.C.

---

[1], With the singular exception of the August 2020 notice of unilateral placement for N.P. Aguilar Decl., ¶ 34.

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

DWK 4022227v1

§ 1412(a)(10)(ii)(I).

Courts have also held that the availability of public benefits to children with disabilities attending public schools versus private religious schools does not violate the Free Exercise Clause as "persons opting to attend private schools, religious or otherwise, must accept the disadvantages as well as any benefits offered by those schools." *Gary S. and Sylvie S. v. Manchester Sch. Dist.*, 374 F.3d 15 (1st Cir. 2004), *cert. denied*, 543 U.S. 988 (2004). Moreover, given the "traditional pattern that has so far prevailed of financial public education via the public schools" it would "be unreasonable and inconsistent to premise a free exercise violation upon Congress's mere failure to provide to disabled children attending private religious schools the identical financial and other benefits it confers upon those attending public schools." *Id*. Therefore, Student and Parent Plaintiffs cannot point to exclusion from public benefits on this basis either.

### c. Plaintiffs' Relief Sought Under Education Code Section 56361 and 56365 Requires A Contractual Relationship

School Plaintiffs allege exclusion from "receipt of crucial funding needed to educate students with disabilities," yet Education Code sections 56361 and 56365 do not merely contemplate funding[2]. Section 56361 establishes the continuum of program options for students with an IEP. Section 56365 discusses the provision of services from an NPS and the contracting that is the foundation for the relationship between the LEA and NPS. Payment of tuition is just one component of the contract between an LEA and NPS and provided in exchange for the IEP services provided to eligible students. Cal. Educ. Code § 56365(d). For these reasons, School Plaintiffs cannot reasonably claim exclusion from "funding" without a

---

[2] Incidentally, LAUSD does not exclude Plaintiff Schools from funding for special education and related services through equitable service provision. Aguilar Decl., ¶ 33; 20 U.S.C. § 1412(a)(10)(A)(vi).

22

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

1    deeper analysis of the contractual relationship between LEAs and NPSs

2    contemplated in the statutes. Nor should the Court be persuaded by any attempt to

3    characterize the benefit here as merely funding.

### 3.    Plaintiffs Are Unable to State a Claim Under the Equal Protection Clause

6        Plaintiffs are also unlikely to prevail on their claims under the equal

7    protection clause.  Plaintiffs' Equal Protection claims are premised on the claim that

8    the NPS certification requirements restrict their ability to send their children to

9    private religious schools of their choice. ECF, Dkt. No. 1, ¶¶206, 219. However,

10   Congress's decision to direct public funding to children with disabilities who attend

11   public versus private religious schools does not impinge on a parent's right to direct

12   their child's education. *Gary S.*, 374 F.3d at 20; *Strout v. Albanese*, 178 F.3d 57, 66

13   (1st Cir. 1999), cert denied 120 S.Ct. 329 (1999) (the "fundamental right [to direct

14   child's upbringing and education] does not require the state to directly pay for a

15   sectarian education"). Additionally, Parent Plaintiffs, like any other parents of a

16   child with a disability, have a right to participate in the IEP process and accept or

17   decline LAUSD's offer of a FAPE for their child. 34 C.F.R. § 300.321(a)(1);

18    34 C.F.R. § 300.9. When a parent accepts the LEA's offer of FAPE, the child has

19   access to the full continuum of special education placements outlined in Education

20   Code section 56361, subject to the least restrictive environment requirements.

21   34 C.F.R. § 300.115(a); Cal. Educ. Code § 56365(a). If Parent Plaintiffs decline

22   LAUSD's offer of FAPE, they can place their child in a private school, including

23   any private religious school, just like any other parent of a child with a disability.

24   20 U.S.C. § 14 12(a)(10)(A). Alternatively, Parent Plaintiffs, like any other parent

25   of a child with a disability, may reject the offer of FAPE, place their child in a

26   private school, including a religious private school, and seek reimbursement from

27   LAUSD. 20 U.S.C. § 1412(a)(10)(C)(iii). The Education Code requirements related

28   to NPS certification and contracting do not abrogate or burden those rights. To the

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

23

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

extent Parent Plaintiffs allege their children are not receiving a FAPE in their current settings, they can utilize the administrative due process complaint procedures[3]. 34 C.F.R. § 300.507. In no way has LAUSD denied Plaintiffs equal protection on the basis of their religion, and so their Equal Protection claims must fail.

### 4.      Legitimate Government Interest Exists

Should the Court determine that strict scrutiny applies, LAUSD has a compelling government interest in upholding the nonsectarian requirement. As the Education Code provides for a contractual, ongoing relationship between LEAs and NPSs, the removal of the nonsectarian requirement would violate the Establishment Clause through requiring direct governmental oversight of a religious entity. This relationship is distinct from the examples raised by Plaintiffs and is sufficient to survive strict scrutiny.

The separation of Church from State "ha[s] been regarded from the beginning as among the most cherished features of our constitutional system." *Committee for Public Education v. Nyquist*, 413 U.S. 756, 796 (1973). The "means by which state assistance flows to private schools is of some importance" and a "material consideration in Establishment Clause analysis." *Mueller v. Allen*, 463 U.S. 388, 399 (1983); *Nyquist*, 413 U.S. 756, 781 (1973). "It is noteworthy that all but one of our recent cases invalidating state aid to parochial schools have involved the direct transmission of assistance from the State to the schools themselves." *Mueller*, 463 U.S. 399 at 399. Indeed, the policies maintaining separation of Church and State attempt to prevent "that kind and degree of government involvement in religious life that, as history teaches us, is apt to lead to strife and frequently straining a political system to the breaking point." *Walz v. Tax Comm'n*, 397 U.S. 664, 694 (1970).

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

---

[3] At a minimum, N.P. is clearly aware of this process, as shown by the multiple due process complaints filed to date. Aguilar, Decl., ¶ 35.

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The Court has found schemes providing far less state involvement in religious schools than Plaintiffs propose here to result in "excessive entanglement between government and religion." *Lemon v. Kurtzman*, 403 U.S. 602, 614 (1971). To determine where this excessive entanglement occurred, the Court looked to the "character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority." *Id.*, at 615. In *Lemon*, the Court struck down a state's direct payment of a salary supplement to private school teachers and reimbursement for the cost of teachers' salaries, textbooks, and instructional materials in certain secular subjects. *Id.* at 607. In *Levitt v. Committee for Public Ed.*, the Court found a state's reimbursement to private schools for the costs of administering teacher-prepared examinations unconstitutional. *Levitt v. Committee for Public Ed.*, 413 U.S. 472 (1973). In *Meek v. Pittenger* and *Wolman v. Walter*, the Court found unconstitutional a state's loan of instructional materials to private schools. *Meek v. Pittenger*, 421 U.S. 349 (1975); *Wolman v. Walter*, 433 U.S. 229 (1977). Notably, the Court found the state's actions in these cases unconstitutional, yet they still primarily involved funding or aid and nothing more.

Plaintiffs allege that the provision of tuition to NPSs under a contract with an LEA is a benefit program under which private citizens "direct government aid to religious schools wholly as a result of their own genuine and independent private choice." *Zelman v. Simmons-Harris*, 536 U.S. 639, 652 (2002). Plaintiffs rely on Supreme Court cases which state that "a neutral benefit program in which public funds flow to religious organizations through the independent choices of private benefit recipients does not offend the Establishment Clause." *Carson as next friend of O. C. v. Makin*, 142 S. Ct. 1987, 1997 (2022). However, this is not such a case, as there are no intervening private citizens here. It is a contract between the LEA and a private school that governs the conduct of these entities, which results in a far different relationship than in *Zelman*. Cal. Educ. Code § 56365(a). Removal of the

Dannis Woliver Kelley
444 W. Ocean Blvd., Suite 1070
Long Beach, CA 90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

nonsectarian NPS certification requirement would result in far more entanglement. An LEA would be required to enter into a legal contract with the private religious school (Cal. Educ. Code, § 56365(a)), monitor the NPS's compliance with implementation of the IEP, state standards, and the IDEA (34 C.F.R. § 300.147(a)), evaluate whether each student placed at the NPS is making appropriate educational progress (Cal. Educ. Code § 56366(a)(2)(B)), consider whether the needs of the student continues to be met at the NPS and whether the student needs to be transitioned to a public school setting (Cal. Educ. Code § 56366(a)(2)(B)(ii)), verify the NPS's compliance with staff training and NPS certification requirements (Cal. Educ. Code § 56366.1(a)(4)(D), and conduct onsite visits prior to placement of a student at the NPS and at least once each school year (Cal. Educ. Code § 56366.1(e)(3).) These oversight requirements are in addition to regular interactions the LEA and NPS must have to develop, update, and implement a student's IEP. 20 U.S.C. § 1414(d)(3)-(4).  In addition, LAUSD has a number of specific oversight obligations for an NPS. Aguilar Decl., ¶¶ 29-31.

This breadth and depth of partnership between the LEA and NPS would create immense, unresolvable challenges for the separation of church and state. "The potential for conflict 'inheres in the situation'" because the LEA would be "constitutionally compelled to assure that the state supported activity is not being used for religious indoctrination." *Levitt*, 413 U.S. at 480, quoting *Lemon*, 403 U.S. at 617, 619. Plaintiffs' statements about their instructional program and mission reveal that any separation of secular and non-secular instruction would be impossible. ECF, Dkt. No. 28-5, ¶14; ECF, Dkt. No. 28-6, ¶13. School Plaintiffs do not attempt to hide their goal of seeking to "provide a distinctively Orthodox Jewish education to children with disabilities" and that "the inculcation and transmission of Jewish religious beliefs and practices to children is the very reason that Shalhevet and Yavneh exist." ECF, Dkt. No. 1, ¶¶76, 15. As "Shalhevet's and Yavneh's religious beliefs and identity permeate their entire school and mission,"

26

separation of public and private religious interests and monitoring of the provision of special education to students at these religious schools would be impossible. ECF, Dkt. No. 1, ¶177.

This overt goal for religious education of students with disabilities would undermine the NPS/LEA relationship and disrupt the ability of the LEA to provide students with a FAPE. Children, and particularly children with disabilities, could be particularly susceptible to the influence of religious education at school. *See Lee v. Weisman*, 505 U.S. 577, 592, 605 n.6 (1991) ("[T]here are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools."); see also *Edwards v. Aguillard*, 482 U.S. 578, 583-84 (1987) (recognizing that heightened vigilance is required in elementary and secondary schools, because attendance is mandatory, the students are "impressionable" and "because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure.") "Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family." *Id*. at 584. These well-accepted and long-recognized understandings make K-12 education a "special context" requiring heightened protection against indoctrination and coercion that infringe on the rights of the students and their families. *Edwards*, 482 U.S. at 583-84; *see also Van Orden v. Perry*, 545 U.S. 677, 690-91 (2005) (recognizing that the reason that things like prayer and display of the Ten Commandments have been prohibited in public schools but allowed in other places is "a consequence of the 'particular concerns that arise in the context of public elementary and secondary schools.'") School Plaintiffs' desire for religious instruction and inculcation vis-à-vis NPS status is not subtle. The religious identity of NPSs could also lead to IEP team discrimination on the basis of religion as parents or IEP team members attempt to steer children into NPSs that support

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

particular religions.

Further, LAUSD, as a governmental entity, has a compelling interest in maintaining the separation of church and state and compliance with state and federal law in this area. *See*, *e.g.*, U.S. Department of Education, *Guidance on Constitutionally Protected Prayer and Religious Expression in Public Elementary and Secondary Schools* (May 15, 2023). The potential for overt religious education with the removal of the "nonsectarian" requirement from NPS certification would also violate Section 8 of Article IV of the California Constitution, which states, "Nor shall any sectarian or denominational doctrine be taught or instruction thereon permitted, directly or indirectly, in any of the common schools of this State."

Maintaining the nonsectarian requirement for NPSs ensures the separation of Church and State and avoids the entanglement and monitoring concerns that would otherwise arise. The nonsectarian requirement is also narrowly tailored to these significant interests. As a result, the Court should uphold the nonsectarian NPS certification requirement under a strict scrutiny analysis.

### B.   Public Policy/ Improper Form of Injunction

#### 1.   The Injunctive Relief Sought by Plaintiffs is Too Vague to be Enforceable

The relief sought by Plaintiffs' Motion is entirely too vague to be enforceable. "'Vagueness' is a question of notice, *i.e.*, procedural due process, and 'broadness' is a matter of substantive law." *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n. 19 (5th Cir.1975). Federal Rule of Civil Procedure 65(d)(1) specifically prohibits injunctive relief which is not "narrowly tailor[ed] ... to remedy the specific action which gives rise to the order" as determined by the substantive law at issue. *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). Rule 65(d)(1) serves two "important" functions: (1) "prevent uncertainty and confusion on the part of those faced with injunctive orders," and thus "avoid ... a contempt citation on a decree too vague to be understood"; and

28

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1   (2) enable "an appellate tribunal to know precisely what it is reviewing." *Schmidt v.*

2   *Lessard*, 414 U.S. 473, 476-477 (1974). To that end, an injunction must be couched

3   in specific and unambiguous terms, such that "an ordinary person reading the

4   court's order [is] able to ascertain from the document itself exactly what conduct is

5   proscribed." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016). For example, in

6   *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 283 (5th Cir. 2008), an order to

7   "cease and desist all racially biased assignment and promotion practices" and

8   "create and implement a program to ensure that black employees receive an

9   equitable proportion of promotions" and "take all necessary steps to remedy the

10  effects of past discrimination" failed to give defendants notice of proscribed and

11  required conduct.

12      The relief sought by Plaintiffs is simply described as "a preliminary

13  injunction barring defendants from enforcing the "nonsectarian" requirement in

14  Cal. Educ. Code §§ 56365 and 56366." However, as LAUSD has made clear, the

15  matter is far more complicated than Plaintiffs make it seem. For the Parent

16  Plaintiffs, there exist three potential options for private school placement, each of

17  which presents separate processes and procedures which may or may not lead to

18  placement at an NPS through the IEP process, depending on the needs of the child

19  and decisions of school district professionals. ECF, Dkt. No. 29, p. 13-15. Cal.

20  Educ. Code §§ 56365 and 56366 do not specifically deny access to NPS placement

21  for Student and Parent Plaintiffs and neither would the injunction, as described,

22  guarantee placement at an NPS for the Student Plaintiffs. For the School Plaintiffs,

23  the injunctive relief sought does not address the complicated contracting process

24  LAUSD must undergo with the School Plaintiffs prior to placing a child at their

25  school through the IEP process, regardless of the application of Cal. Educ. Code

26  §§ 56365 and 56366. Aguilar Decl., ¶¶21-24; ECF, Dkt. No. 29, p. 24-25. It is

27  entirely unclear from the injunctive relief sought how LAUSD is supposed to

28  navigate this complicated procedure to ensure the injunctive relief is carried out.

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

29

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

1   For the Parent Plaintiffs, LAUSD cannot simply write a blank check for access to

2   its special education programming, overriding all existing processes up to and

3   including overriding the collaborative IEP team placement process. For the School

4   Plaintiffs, the injunctive relief would require LAUSD to waive both statutory

5   requirements and its own processes and procedures to enter into a master contract

6   without either verification of program appropriateness and/or negotiation. Neither

7   option is reasonable.

8       The injunctive relief sought by Plaintiffs fails to provide sufficient specificity

9   to instruct LAUSD on how to carry out the many complicated processes at issue.

10  As such, the preliminary injunction sought does not comply with Rule 65(d)(1) and

11  must be denied.

12      **2.      Injunctive Relief Cannot Be Used to Control the Discretion**

13      **of Public Officials**

14      Courts and litigants are not well-positioned and lack the expertise to make these

15  vital education decisions. Doing so violates separation of powers principles by

16  usurping the executive authority of democratically elected school officials. *See Queen*

17  *City Constr., Inc. v. City of Rochester*, 604 N.W.2d 368, 379 (1999) (concluding that

18  the denial of an injunction to prohibit a city from entering into a contractual

19  arrangement served the public interest because the "power to award contracts is

20  entrusted to the city's discretion , and a court should be wary to interfere" with the

21  exercise of that discretion (citations omitted) ); *see also Groves v. Dept. of Corr.*, 811

22  N.W.2d 563, 568 (2011) ("Litigation aimed at second-guessing the exercise

23  of discretion by the appropriate public officials in awarding a public contract will not

24  further the public interest; it will only add uncertainty, delay, and expense to fulfilling

25  the contract." (citations omitted) ). *Shapell Industries, Inc. v. Governing Board,* 1

26  Cal.App.4th 218, 230 (1991).

27      Here, the injunctive relief sought would necessarily require the Court to control

28  the discretion of LAUSD officials. In the context of provision of special education

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

services under the IDEA, courts have consistently rejected requests to replace a school district's discretion with its own. "It is in the nature of [IDEA] and the standard we adopt to resist such an effort: The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created. This absence of a bright-line rule, however, should not be mistaken for an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 404 (2017), citing to *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982). The placement of Student Plaintiffs at an NPS would require the discretion of LAUSD officials, regardless of the manner in which that placement occurred. Aguilar Decl., ¶¶19-20. And the process of certifying the School Plaintiffs would require LAUSD to enter into a contract with the School Plaintiffs, itself a process fraught with issues requiring the exercise of LAUSD official's discretion. Aguilar Decl., ¶¶24-26. As such, LAUSD discretion would be necessarily controlled in order to effect the injunctive relief sought.

### 3.    Plaintiffs' Injunctive Relief is Barred by LAUSD's Sovereign Immunity

Plaintiffs' injunctive relief is barred by LAUSD's sovereign immunity. Under the Eleventh Amendment to the United States Constitution, a state is not subject to suit in federal court. U.S. Const. Amend. XI; *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). In *Belanger v. Madera Unif. Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992), the Ninth Circuit held that California school districts are arms of the State of California, and thus enjoy Eleventh Amendment immunity. *Id.*, at 251-52. And in 2017, the Ninth Circuit reaffirmed its holding that California school districts are arms of the State with Eleventh Amendment immunity, after changes to the California Education Code. *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923 (9th Cir. 2017). A sovereign immunity defense is the proper subject of a Rule 12(b)(1) or (b)(6) motion to dismiss. *Id.* at 927, fn. 2 ("A sovereign immunity

31

defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion.") *see also C.N. v. Wolf*, 410 F. Supp. 2d 894, 898 (C.D. Cal. 2005) ("an action may not be maintained against the State, or in this case the [school] District, an agency of the State, for either damages or injunctive and declaratory relief.").

Plaintiffs bring this action under 42 U.S.C. section 1983 related to the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause. ECF, Dkt. No. 1, ¶1. While Plaintiffs' subsequent list of causes of action references the constitutional provisions without mention of section 1983, the First and Fourteenth Amendments are not self-enforcing and require section 1983 to bring a suit against state actors. 42 U.S.C. section 1983.

The Ninth Circuit has held—multiple times—that California school districts enjoy Eleventh Amendment immunity against section 1983 claims. *Sato*, 861 F.3d at 927 (affirming dismissal of section 1983 claim based on immunity); *Belanger*, 963 F.2d at 250 (same, but on summary judgment). For their part, California courts also treat California school districts, and interpret California law regarding school districts, the same. *Kirchmann v. Lake Elsinore Unified Sch. Dist.*, 83 Cal. App. 4th 1098, 1100 (2000) ("in accordance with authority of the Ninth Circuit Court of Appeals holding that a California school district is an arm of the state for Eleventh Amendment purposes . . . , we will conclude the District does enjoy the state's immunity from liability under section 1983."). Plaintiffs' assertion of any claims against LAUSD under section 1983 in the face of overwhelming authority barring it is frivolous.

As LAUSD holds sovereign immunity pursuant to the Eleventh Amendment, Plaintiffs' injunctive relief is barred against LAUSD.

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA 90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## V.     CONCLUSION

Plaintiffs have failed to carry the heavy burden required to enforce a mandatory preliminary injunction. As such, their motion for preliminary injunction must fail.

DATED: June 30, 2023

DANNIS WOLIVER KELLEY
SUE ANN SALMON EVANS
MEAGAN M. KINSEY


By:  _/s/ Sue Ann Salmon Evans_
SUE ANN SALMON EVANS
Attorneys for Defendants
Los Angeles Unified School District
and Anthony Aguilar

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

33

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DWK 4022227v1

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Los Angeles Unified School District and Anthony Aguilar, certifies that this brief contains 24 pages, which complies with Judge Staton's 25-page limit for memoranda of points and authorities.

DATED: June 30, 2023

DANNIS WOLIVER KELLEY
SUE ANN SALMON EVANS
MEAGAN M. KINSEY


By: _/s/ Sue Ann Salmon Evans_
SUE ANN SALMON EVANS
Attorneys for Defendants
Los Angeles Unified School District
and Anthony Aguilar

DANNIS WOLIVER KELLEY
444 W. OCEAN BLVD., SUITE 1070
LONG BEACH, CA  90802

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DWK 4022227v1