Eric C. Rassbach (CA SBN 288041)
erassbach@becketlaw.org
Nicholas R. Reaves (DC Bar No. 1044454)
Daniel L. Chen (CA SBN 312576)
Laura Wolk Slavis (DC Bar No. 1643193)
Brandon L. Winchel* (CA SBN 344719)
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave., Suite 400
Washington, DC 20006
202-955-0095 tel. / 202-955-0090 fax

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAYA LOFFMAN and JONATHAN LOFFMAN, on their own behalf and on behalf of their minor child M.L.; FEDORA NICK and MORRIS TAXON, on their own behalf and on behalf of their minor child K.T.; SARAH PERETS and ARIEL PERETS, on their own behalf and on behalf of their minor child N.P.; JEAN & JERRY FRIEDMAN SHALHEVET HIGH SCHOOL; and SAMUEL A. FRYER YAVNEH HEBREW ACADEMY,<br><br>        Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION; TONY THURMOND, in his official capacity as Superintendent of Public Instruction; LOS ANGELES UNIFIED SCHOOL DISTRICT; and ANTHONY AGUILAR, in his official capacity as Chief of Special Education, Equity, and Access,<br><br>        Defendants. | Case No.:<br>2:23-cv-01832-JLS-MRW<br><br>**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: July 21, 2023<br>Time: 10:30am<br>Courtroom: 8A<br>Judge: Hon. Josephine L. Staton |

\* Not a member of the DC Bar; admitted in
California. Practice limited to cases in federal court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION .................................................................................... 1

ARGUMENT .......................................................................................... 2

I.    Plaintiffs have standing to seek preliminary injunctive relief. ........................ 2

II.   Plaintiffs have shown a likelihood of success on the merits. .......................... 4

    A.   Defendants violate the First Amendment by excluding individuals and institutions from a public benefit solely because they are religious (Count I). ......................................................................... 4

    B.   Defendants violate the First Amendment because the law is not generally applicable (Count III). .......................................................... 6

    C.   Defendants have not carried their burden of satisfying strict scrutiny. ..... 7

    D.   Defendants violate the unconstitutional conditions doctrine (Count V).... 8

III.  Plaintiffs satisfy the remaining preliminary injunction factors. ...................... 8

CONCLUSION ..................................................................................... 12

CERTIFICATE OF SERVICE ................................................................. 14

CERTIFICATE OF COMPLIANCE ......................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for Wild Rockies v. Cottrell*,
   632 F.3d 1127 (2011) ...................................................................... 8

*Arc of Cal. v. Douglas*,
   757 F.3d 975 (9th Cir. 2014) ........................................................ 10

*Associated Press v. Otter*,
   682 F.3d 821 (9th Cir. 2012) .......................................................... 9

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018) ................................................................... 11

*Bras v. Cal. Pub. Utils. Comm'n*,
   59 F.3d 869 (9th Cir. 1995) ............................................................. 3

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
   29 F.4th 468 (9th Cir. 2022) ...................................................... 7, 9

*Carson v. Makin*,
   142 S. Ct. 1987 (2022) .......................................................... 4, 5, 11

*City of Los Angeles v. Barr*,
   929 F.3d 1163 (9th Cir. 2019) .................................................... 2-3

*Cmty. House, Inc. v. City of Boise*,
   490 F.3d 1041 (9th Cir. 2007) ........................................................ 9

*Cuviello v. City of Vallejo*,
   944 F.3d 816 (9th Cir. 2019) ........................................................ 11

*Espinoza v. Mont. Dep't of Revenue*,
   140 S. Ct. 2246 (2020) .................................................................... 4

*Fulton v. City of Philadelphia*,
   141 S. Ct. 1868 (2021) .................................................................... 6

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ........................................................ 12

*Gonzales v. O Centro*,
 546 U.S. 418 (2006)..................................................................7

*Groff v. DeJoy*,
 --- S. Ct. ---, 2023 WL 4239256 (June 29, 2023)...............................7

*Hernandez v. Sessions*,
 872 F.3d 976 (9th Cir. 2017) .......................................................11, 12

*Index Newspapers LLC v. U.S. Marshals Serv.*,
 977 F.3d 817 (9th Cir. 2020) ........................................................ 8-9

*Kennedy v. Bremerton Sch. Dist.*,
 142 S. Ct. 2407 (2022)..................................................................11

*Klein v. City of San Clemente*,
 584 F.3d 1196 (9th Cir. 2009) ........................................................9

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
 571 F.3d 873 (9th Cir. 2009) ..........................................................12

*Maxwell v. McLane Pac., Inc.*,
 No. 17-550, 2017 WL 8186758 (C.D. Cal. Oct. 19, 2017) ..................4

*Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of
 Jacksonville*,
 508 U.S. 656 (1993)....................................................... 2-3, 10

*Niantic, Inc. v. Global++*,
 No. 19-cv-03425, 2019 WL 8333451 (N.D. Cal. Sept. 26, 2019) ......4

*Porretti v. Dzurenda*,
 11 F.4th 1037 (9th Cir. 2021) .........................................................9

*Renee v. Duncan*,
 686 F.3d 1002 (9th Cir. 2012) ........................................................4

*Sherbert v. Verner*,
 374 U.S. 398 (1963)......................................................................8

*Townley v. Miller*,
 722 F.3d 1128 (9th Cir. 2013) .......................................................2

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
 582 U.S. 449 (2017)..............................................................*passim*

*Yazzie v. Hobbs*,
　977 F.3d 964 (9th Cir. 2020) ..................................................................2

**Statutes**

Cal. Educ. Code § 56034 .........................................................................5

Cal. Educ. Code § 56365 .......................................................................12

Cal. Educ. Code § 56366 .......................................................................12

## INTRODUCTION

Reading Defendants' response briefs, one would think Plaintiffs ask this Court to definitively determine whether Children Plaintiffs would ultimately be placed in an Orthodox Jewish NPS, or whether School Plaintiffs could ever receive such certification. But the Court need do no such thing. Instead, this Court need only answer a single question: Does the Constitution permit Defendants to categorically exclude Plaintiffs from the NPS placement process solely because they are religious? Under binding Supreme Court precedent, the answer is a resounding no.

Likewise, Defendants conjure up a parade of remedy-related horribles, alleging that granting Plaintiffs injunctive relief would require this Court to wade into a thicket of regulatory questions, compel LAUSD to enter into contracts with Plaintiffs, and curb the lawful discretion of government officials. Such histrionics find no grounding in reality. The remedy Plaintiffs seek is as simple as the question presented to this Court: Allow California's NPS placement and certification process to operate exactly as it does today, just free from unconstitutional religious discrimination. The judicial micromanagement Defendants imagine is pure fiction.

What Defendants don't argue is equally revealing. No Defendant disputes the factual basis for the ongoing constitutional injury to Plaintiffs. No Defendant disputes that the religious exclusion prevents Parent Plaintiffs from seeking to have Children Plaintiffs placed in a religious NPS, or that it prevents School Plaintiffs from applying to become a certified NPS. Instead of disputing any of this, Defendants recycle their motion-to-dismiss arguments (often word-for-word), arguing that Plaintiffs lack standing and that Defendants' undisputed discrimination is just fine. But their standing arguments run headlong into controlling Supreme Court precedent and the purported justifications propping up their discrimination are grounded in a decision the Supreme Court has not once, but twice, recently confirmed is no longer good law. Defendants thus provide no reason to refuse the preliminary injunction.

But the problems with Defendants' arguments don't end there. Indeed, their

concessions alone warrant injunctive relief. Neither State nor District Defendants spend a word of briefing on the merits of Count III (discretion to grant individualized exemptions), conceding that argument altogether. District Defendants, going still further, completely ignore Plaintiffs' unconstitutional conditions claim (Count V), choosing instead to discuss Count IV, which was not raised in Plaintiffs' preliminary injunction motion. And when they finally get around to strict scrutiny, no Defendant makes any argument concerning least-restrictive means, conceding they've failed to carry that extremely high burden, too.

From start to finish, Defendants' arguments find no footing in caselaw, let alone the Constitution. An injunction should issue.

**ARGUMENT**

## I. Plaintiffs have standing to seek preliminary injunctive relief.

For the same reasons Plaintiffs articulated in their consolidated opposition to Defendants' motions to dismiss, Dkt. 37 at 12-20, Plaintiffs have standing to seek preliminary injunctive relief. Standing for a preliminary injunction may be shown "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013) (citation omitted). And State Defendants agree that this Court must assess standing on the basis of Plaintiffs' "well-plead allegations and whatever other evidence they submitted in support of their motion to meet their burden." Dkt. 38 at 4 (citation omitted); *e.g.*, *Yazzie v. Hobbs*, 977 F.3d 964, 966-67 (9th Cir. 2020) (looking to complaint to assess standing).

Here, Plaintiffs' complaint and supporting declarations confirm standing. Plaintiffs have alleged that California's nonsectarian restriction prevents Plaintiffs from accessing special-education benefits on an equal basis with nonreligious individuals and institutions. As the Ninth Circuit and Supreme Court have confirmed, this "inability to compete on an even playing field constitutes a concrete and particularized injury." *City*

1  *of Los Angeles v. Barr*, 929 F.3d 1163, 1173 (9th Cir. 2019); *Ne. Fla. Chapter of the*
2  *Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 667 (1993)
3  (*AGC*) (same); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463
4  (2017) ("The express discrimination against religious exercise here is not the denial of
5  a grant, but rather the refusal to allow the Church—solely because it is a church—to
6  compete with secular organizations for a grant.").

7      As with their motions to dismiss, Defendants completely ignore this caselaw, instead
8  arguing Plaintiffs must prove in advance that they can satisfy every other aspect of the
9  NPS placement or certification process. Dkt. 38 at 4-10; Dkt. 36 at 17-20. But this is a
10 red herring. Plaintiffs need not preemptively show that—with the discriminatory bar
11 removed—Children Plaintiffs would ultimately be placed in a particular NPS, nor that
12 School Plaintiffs would satisfy the other NPS certification requirements. Dkt. 37 at 16;
13 *see, e.g.*, *Bras v. Cal. Pub. Utils. Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995) (An
14 excluded individual "need not allege that he would have obtained the benefit but for the
15 barrier in order to establish standing"). This is because the injury flows from the "denial
16 of equal treatment resulting from the imposition of the barrier, not the ultimate inability
17 to obtain the benefit." *Id.*

18     Defendants' remaining recycled standing arguments also fall flat. *See* Dkt. 36 at 13-
19 20; Dkt. 38 at 7-10. They contend that Plaintiff Schools are not "able and ready" to
20 apply for NPS certification. But in the pleading context, allegations that a
21 discriminatory barrier prevented a plaintiff from applying to a governmental program
22 meet this test. *See AGC*, 508 U.S. at 659; Dkt. 37 at 16-18. Defendants argue that Parent
23 Plaintiffs must first proceed through IDEA's grievance process before filing suit, but
24 such contentions are inconsistent with IDEA and would in any event be futile. Dkt. 37
25 at 18-19. And though District Defendants claim School Plaintiffs' injury is neither
26 traceable to them nor redressable by this Court, Dkt. 36 at 19-20, that argument also
27 fails. District Defendants cause injury by participating in the discriminatory contracting
28 process and refusing to request a waiver, and an injunction would redress the injury by

1  causing a "change in a legal status" that would cause "a significant increase in the
2  likelihood that the plaintiff would obtain relief that directly redresses the injury
3  suffered." *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012). *See* Dkt. 37 at 19-20.
4  **II. Plaintiffs have shown a likelihood of success on the merits.**

5      Plaintiffs moved for injunctive relief on three of their six claims: Count I (exclusion
6  from a generally available public benefit), Count III (discretion to grant individualized
7  exemptions), and Count V (unconstitutional condition on enumerated rights). Dkt. 28-
8  1 at 13-24. Both State and District Defendants ignore Plaintiffs' Count III
9  individualized discretion argument, thus conceding Plaintiffs' likelihood of success on
10  this count. Dkt. 38 at 10-14; Dkt. 36 at 20-28; *Niantic, Inc. v. Global++*, No. 19-cv-
11  03425, 2019 WL 8333451, at *6 (N.D. Cal. Sept. 26, 2019) ("Their failure to respond
12  amounts to a concession that the alleged violations . . . justify a preliminary
13  injunction."); *Maxwell v. McLane Pac., Inc.*, No. 17-550, 2017 WL 8186758, at *7
14  (C.D. Cal. Oct. 19, 2017) ("[B]ecause Plaintiff has failed to address this argument,
15  Plaintiff is deemed to have conceded [it]."). And District Defendants offer *no response*
16  to Count V, Dkt. 36 at 20-28, conceding that argument as well. Moreover, as explained
17  below, the few arguments Defendants do make are unavailing.

18      **A. Defendants violate the First Amendment by excluding individuals and**
19        **institutions from a public benefit solely because they are religious (Count I).**
20      Plaintiffs are categorically excluded from participation in a public benefits program
21  based on their religious beliefs. Dkt. 28-1 at 13-14. A trilogy of Supreme Court cases
22  has established that such exclusion violates the Free Exercise Clause. *Carson v. Makin*,
23  142 S. Ct. 1987, 1996 (2022); *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246,
24  2255 (2020); *Trinity Lutheran*, 582 U.S. at 462.

25      State Defendants' only argument is that Plaintiffs have experienced no substantial
26  burden on their free exercise rights because California's NPS program is not a "public
27  benefit," but rather a "*public* education" provided to children with disabilities. Dkt. 38
28  at 11-12. As an initial matter, this argument fails because Plaintiffs need not

1   demonstrate the presence of a substantial burden. *See Trinity Lutheran*, 582 U.S. at 466
2   n.4 ("[A] law targeting religious beliefs as such is never permissible."); Dkt. 37 at 22-
3   23. But in any event, State Defendants' argument is foreclosed by *Carson*.

4       As *Carson* made clear, California "may provide a strictly secular education in its
5   public schools," 142 S. Ct. at 2000, but that is not what California has done; instead, it
6   has allowed *secular private* schools to receive state funds to provide an education to
7   children with disabilities. California's "administration of that benefit is subject to the
8   free exercise principles governing any such public benefit program—including the
9   prohibition on denying the benefit based on a recipient's religious exercise." *Id.*

10      The State attempts to distinguish *Carson* by arguing that an NPS is more closely
11  regulated than Maine's schools, such that an NPS and a public school are one and the
12  same. Dkt. 38 at 11-13. But *Carson* did not turn on how closely Maine regulated its
13  private schools. Instead, it focused on the distinction between *public* and *private*
14  schools, explaining that Maine's law made clear that the funding recipients remained
15  private, as "confirmed" by the many differences between Maine's private and public
16  schools. 142 S. Ct. at 1999-2000.

17      The same is true here. Most notably, State Defendants' argument is belied by the
18  very name "*nonpublic*, nonsectarian school"—which is defined as "a *private*,
19  nonsectarian school that enrolls individuals with exceptional needs pursuant to an
20  individualized education program." Cal. Educ. Code § 56034 (emphasis added); *see
21  also Carson*, 142 S. Ct. at 1998 (looking to statutory language to determine whether
22  private schools provided a public education). State Defendants don't dispute this fact.
23  Moreover, as Defendant Aguilar admits, each NPS can have "their own admissions
24  requirements." Dkt. 36-1 ¶ 20. And no one suggests that the NPS schools become arms
25  of the state subject to the Constitution simply by their certification and receipt of state
26  funds. Thus, while State Defendants point to certain ways in which California regulates
27  NPSs, any difference between Maine and California's regulations is constitutionally
28  irrelevant in the face of undisputed evidence that NPS certified schools remain *private*.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

5

Unable to distinguish *Carson*, State Defendants pivot back to the same arguments they made in their motion to dismiss—citing outdated caselaw that does not involve explicit religious exclusion from a government program. These cases have no purchase after *Carson*. Dkt. 37 at 24-25.

Defendants next argue that Plaintiffs' claims fail simply because California requires NPS schools to sign a contract. Dkt. 36 at 22-23; Dkt. 38 at 12-13. But *Trinity Lutheran* rejected this argument by citing *AGC* (a contracting case) for the proposition that the injury in fact is the inability to even bid for a contract, not the ultimate denial of that contract. *See* 582 U.S. at 463. And *Fulton* further explained that a contractual relationship doesn't abrogate the contracting party's constitutional right to be free of discrimination on the basis of religion. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878 (2021) ("We have never suggested that the government may discriminate against religion when acting in its managerial role.").

District Defendants' Free Exercise arguments also lack merit. They claim Plaintiffs haven't been denied a benefit because they "are not excluded from [the] continuum of special education programming or the ability to attend an NPS." Dkt. 36 at 20-21. But Plaintiffs nowhere claim they are excluded from the program altogether. Their injury flows from the inability to advocate for NPS placement or to seek NPS certification—that is, to participate in this continuum of special education services on an equal basis with nonreligious individuals and institutions. Loffman Decl. ¶¶ 13-18; Nick Decl. ¶¶ 14-24; Perets Decl. ¶¶ 11-18; Einhorn Decl. ¶¶ 12-14; Block Decl. ¶¶ 13-15.

**B. Defendants violate the First Amendment because the law is not generally applicable (Count III).**

The nonsectarian restriction fails the general-applicability requirement because it provides a "mechanism for individualized exemptions." *Fulton*, 141 S. Ct. at 1877; Dkt. 28-1 at 17-19. Puzzlingly, neither District nor State Defendants address the merits of this claim whatsoever. Neither cites *Fulton*—much less distinguishes it—nor do they quibble with how the waiver process operates. Accordingly, Defendants concede that

the undisputed discretion to waive NPS certification requirements—and District Defendants' refusal to seek such a waiver for Plaintiff Schools—trigger strict scrutiny under binding Supreme Court precedent. *Supra* 4.

**C. Defendants have not carried their burden of satisfying strict scrutiny.**

Because the nonsectarian requirement denies Plaintiffs a public benefit on the basis of religion and is not generally applicable, it must survive "the strictest scrutiny." *Trinity Lutheran*, 582 U.S. at 458. But Defendants have not come close to carrying their burden. *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022); *Gonzales v. O Centro,* 546 U.S. 418, 429 (2006) (confirming that "the burdens at the preliminary injunction stage track the burdens at trial").

Both Defendants simply rehash (almost verbatim) their motion-to-dismiss strict scrutiny analysis, *compare* Dkt. 36 at 24-28 and Dkt. 38 at 14-18 *with* Dkt. 31-1 at 31-36 and Dkt. 29 at 32-35, so a detailed response here is unnecessary. It suffices to point out that Defendants' compelling interests (or *legitimate* interests, as incorrectly stated by District Defendants), are all rooted in *Lemon*, a "now abrogated" decision. *Groff v. DeJoy*, --- S. Ct. ---, 2023 WL 4239256, at *7 & n.7 (June 29, 2023); *see* Dkt. 37 at 30-32. And Defendants concerns about inculcation, Dkt. 38 at 16-17, are wholly misplaced; the ability to advocate for a religious NPS placement does not mean that unsuspecting children would be *forced* to attend a religious school without their parents' consent or knowledge. *Cf.* Dkt. 36 at 16, 30 (describing parents' role in "collaborative IEP team placement process"). Most important, Defendants cannot have a compelling interest in excluding religious individuals and institutions from the NPS process because California *already funds* private religious schools via parental and unilateral placement. *See* Dkt. 37 at 3-4; Dkt. 38 at 2-4.

But this Court need not wade into compelling interests because Defendants have failed to make *any* argument that their nonsectarian requirement is the least restrictive means of advancing these alleged interests. Dkt. 36 at 24-28; Dkt. 38 at 14-18. Even if Defendants were truly concerned about state funding for religious education, Dkt. 38 at

16-17, excluding *all* "sectarian" schools from participation in the program—regardless of how they would use IDEA funds—is far from the least restrictive means of doing so. *See id*. at 3 (IDEA funds "may not be used for religious instruction"). They could instead, for example, ensure that only families who *want* their children placed in a religious NPS are directed to that school. But because they have put forward nothing more than conclusory statements on this score, they fail to carry *their* burden and instead concede their restrictions fail strict scrutiny too. *See* Dkt. 37 at 32-33.

**D. Defendants violate the unconstitutional conditions doctrine (Count V).**

The nonsectarian restriction imposes an unconstitutional condition by extracting a surrender of Plaintiffs' First Amendment rights, forcing them to give up their religious identities as a condition of accessing otherwise generally available public funds. Dkt. 28-1 at 20-21. Only State Defendants address Plaintiffs' unconstitutional conditions claim, meaning District Defendants concede it. *Supra* 4.

State Defendants' arguments fail for reasons already explained: They cite precedent applying the doctrine under the Fourth and Fifth Amendments, where a restriction *rationally related* to the state's objectives is permitted. Dkt. 38 at 18. But the Supreme Court has rejected this test in the free exercise context, holding instead that "only the gravest abuses, endangering paramount interest, give occasion for permissible limitation." *Sherbert v. Verner*, 374 U.S. 398, 406-07 (1963). Because Defendants cannot make that showing here, they violate the doctrine.

**III. Plaintiffs satisfy the remaining preliminary injunction factors.**

The likelihood of irreparable harm absent relief, the balance of equities, and the public interest all favor Plaintiffs. *See All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (2011). These factors are considered on a "sliding scale," on which a showing of "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction." *Id.* at 1134-35.

***Irreparable harm.*** "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Index Newspapers LLC v. U.S. Marshals*

1   *Serv.*, 977 F.3d 817, 837 (9th Cir. 2020) (cleaned up). Indeed, the loss of constitutional

2   freedoms, "for even minimal periods of time, unquestionably constitutes irreparable

3   injury." *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012). Because Plaintiffs

4   have demonstrated a likelihood of success on their First Amendment claims (*see* Section

5   II), they also satisfy this requirement. *Cal. Chamber*, 29 F.4th at 482 (irreparable harm

6   is "relatively easy to establish"); *Klein v. City of San Clemente*, 584 F.3d 1196, 1208

7   (9th Cir. 2009) ("our caselaw clearly favors granting preliminary injunctions to a

8   plaintiff . . . who is likely to succeed on the merits of his First Amendment claim").

9          While District Defendants concede irreparable harm by not addressing it, State

10   Defendants fare no better. They agree that loss of First Amendment rights is irreparable,

11   Dkt. 38 at 20, but then claim Plaintiffs' harms are not "imminent" as Plaintiff "Schools

12   can continue operating as Jewish Orthodox schools," and "the Families can practice

13   their faith." *Id*. at 20-22. This (again) misunderstands Plaintiffs' injury–the total

14   exclusion caused by the nonsectarian requirement—which continues to harm Children

15   Plaintiffs each day they are deprived of the proper placement and harm School Plaintiffs

16   each day they cannot apply for NPS certification. There is nothing speculative or

17   uncertain about this ongoing, definite harm. *Supra* 2-4.

18          ***Balance of equities and public interest.*** Where the government opposes a

19   preliminary injunction, the balance of equities and public interest factors "merge."

20   *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021). This inquiry favors an

21   injunction because it is never in the public interest to violate constitutional rights;

22   instead, "this court has consistently recognized the significant public interest in

23   upholding First Amendment principles." *Cal. Chamber*, 29 F.4th at 482 (cleaned up).

24   And "[t]he fact that the plaintiffs have raised 'serious First Amendment questions

25   compels a finding that . . . the balance of hardships tips sharply in [their] favor.'" *Cmty.*

26   *House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007).

27          While District Defendants concede these factors too, State Defendants only response

28   is to (incorrectly) claim that Plaintiffs argue these factors are met "solely" based on their

---

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

9

likelihood of success. Dkt. 38 at 19-20. Not so. Plaintiffs raised distinct arguments as to why these factors "strongly support" injunctive relief on the facts of this case, Dkt. 28-1 at 23, not that they "collapse" into likelihood of success, Dkt. 38 at 20.

Defendants next offer a smorgasbord of last-gasp arguments concerning remedy. None have merit.

***Injunction is too vague.*** District Defendants argue that an injunction cannot issue because it would require LAUSD to enter into a "complicated contracting process" and "waive both statutory requirements and its own processes and procedures to enter into a master contract without either verification of program appropriateness and/or negotiation." Dkt. 36 at 29-30. Relatedly, they argue the injunction would "control the discretion of public officials." Dkt. 36 at 30. These arguments are yet another red herring. Plaintiffs do not ask this Court to enter an injunction compelling Defendants to sign a contract with School Plaintiffs; they ask for an injunction "barring defendants from enforcing the 'nonsectarian' requirement in Cal. Educ. Code §§ 56365 and 56366" in its contracts. *Id.* at 29; *see also* Dkt. 28-9 (Proposed Order). The injunction would simply remove an unconstitutional categorical bar from the application process—it would not dictate public officials' decisions, let alone placement outcomes or NPS certification decisions. It would simply allow Plaintiffs to be "*considered . . .* without the burden of invidiously discriminatory disqualifications," thus remedying the injury created by the unconstitutional restriction. *AGC*, 508 U.S. at 666; *Trinity Lutheran*, 582 U.S. at 463. If anything, it would *increase* officials' discretion.

***Delay.*** State Defendants argue that Plaintiffs "delay[ed]" seeking an injunction, "undercut[ting] . . . irreparable harm." Dkt. 38 at 22-23. But State Defendants agree that the loss of First Amendment rights is "unquestionably" irreparable, Dkt. 38 at 19-20, and do not dispute that "[u]sually, delay is but a single factor to consider in evaluating irreparable injury; [and] courts are loath to withhold relief solely on that ground." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (cleaned up). And in any event, no delay occurred here. Plaintiffs promptly filed suit after two changes in the law

removed any remaining doubt that California's nonsectarian restriction cannot stand. First, the Supreme Court rejected Maine's identical public-education argument in 2022. *Carson*, 142 S. Ct. at 1995-96. Second, the Supreme Court overruled "*Lemon* and its progeny" last term, *Kennedy v. Bremerton School District*, 142 S. Ct. 2407, 2427 (2022), removing the foundation justifying all of Defendant's purportedly compelling interests. Plaintiffs filed their complaint and sought a preliminary injunction within one year of these decisions—hardly undue delay. Finally, even State Defendants' own cases don't support their position here. The plaintiff in *Benisek*, Dkt. 38 at 22, waited *three years* after filing a complaint before seeking a preliminary injunction. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). And *Garcia* and *Straumann*, Dkt. 38 at 22, are both patent infringement cases—a context in which urgency is particularly probative of the alleged injury. Here, by contrast, Plaintiffs seek redress for an "ongoing, worsening injur[y]," a context where "tardiness is not particularly probative[.]" *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). Alleged delay is no reason to deny an injunction here. *Id.*

***Mandatory injunction.*** Finally, State Defendants argue Plaintiffs' injunction is "mandatory" and thus subject to a showing that the law "clearly favors" plaintiffs. Dkt. 38 at 23-24. Not so. Plaintiffs ask this Court to require Defendants to conduct their NPS certification "in accordance with constitutional processes," which would "prevent[] future constitutional violations, a classic form of prohibitory injunction." *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) (collecting cases and noting "the inherent contradictions underlying the somewhat artificial legal construct" differentiating mandatory from prohibitory injunctions). Indeed, State Defendants' own arguments confirm the injunction is prohibitory. They complain that, if enjoined, they will have "to review and analyze the extensive NPS application materials received from any sectarian applicants, conduct an on-site review of each applicant's facility and program, and make a certification decision." Dkt. 38 at 23. Precisely. Plaintiffs do not ask this Court to "order[] a responsible party to take action" they otherwise would not

have taken, *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009), they ask that State Defendants engage in their current actions free from constitutional defect. *See Hernandez*, 872 F.3d at 998 (injunction "prohibit[ting] the government from conducting new bond hearings under procedures that will likely result in unconstitutional detentions" was prohibitory). And in any event, Plaintiffs have carried their burden of showing that the law clearly favors their position—indeed, this is nowhere close to a "doubtful case[]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

## CONCLUSION

The Court should grant a preliminary injunction barring defendants from enforcing the "nonsectarian" requirement in Cal. Educ. Code §§ 56365 and 56366.

Dated: July 7, 2023                           Respectfully submitted,

                                              /s/ *Eric C. Rassbach*
                                              Eric C. Rassbach (CA SBN 288041)
                                              erassbach@becketlaw.org
                                              Nicholas R. Reaves (DC Bar No. 1044454)
                                              Daniel L. Chen (CA SBN 312576)
                                              Laura Wolk Slavis (DC Bar No. 1643193)
                                              Brandon L. Winchel* (CA SBN 344719)
                                              The Becket Fund for Religious Liberty
                                              1919 Pennsylvania Ave., Suite 400
                                              Washington, DC 20006
                                              202-955-0095 tel. / 202-955-0090 fax

                                              * Not a member of the DC Bar; admitted in
                                              California. Practice limited to cases in federal court.

                                              *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

On July 7, 2023, I filed the foregoing document with the Court via ECF. I hereby certify that I have served the document on all counsel by a manner authorized by the Federal Rules of Civil Procedure.

/s/ *Eric C. Rassbach*
Eric C. Rassbach

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Plaintiffs, certifies that this brief contains less than 12 pages, which complies with this Court's page limit for reply briefs.


Dated: July 7, 2023


                                        /s/ *Eric C. Rassbach*
                                         Eric C. Rassbach

---